

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WHATABURGER RESTAURANTS LLC, | § | No. 08-13-00280-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | County Court at Law Number Seven |
| | § | |
| YVONNE CARDWELL, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 2013DCV0910) |
| | § | |

**O P I N I O N**

The opinion dated August 13, 2014, is hereby withdrawn and the following opinion is substituted in its place.

Whataburger Restaurants LLC, Appellant, brings this interlocutory appeal of the trial court's order denying Whataburger's motion to compel arbitration and motion to dismiss Yvonne Cardwell's personal injury suit. We reverse the trial court's order and remand with instructions.

**BACKGROUND**

As a condition of employment, Whataburger employees are subject to the arbitration "policy" set out in Whataburger's employee handbook. When Appellee Yvonne Cardwell became a Whataburger employee, she initialed and signed an acknowledgement sheet stating that

she understood Whataburger would submit claims or disputes related to employment, including workplace injuries, to arbitration and that by accepting or continuing employment, she would be required to submit any legally recognized claims or disputes to arbitration.

In February 2013, Cardwell filed suit against Whataburger for personal injuries sustained in the course of her employment as a dishwasher claiming that Whataburger's "alleged Arbitration Agreement and Injury Plan or . . . Occupational Benefit Plan" are void and invalid for fifteen specified reasons. In response to Whataburger's motion to compel arbitration and motion to dismiss, filed the afternoon prior to the hearing, Cardwell argued the arbitration agreement was invalid, that Whataburger had failed to meet its burden of proving the existence of an enforceable arbitration agreement, and that if an arbitration agreement exists, it is substantively and procedurally unconscionable as well as illusory. Cardwell also contended that the FAA is inapplicable to her claim as it does not involve a "transaction involving commerce," and argued that application of the FAA would violate the Tenth Amendment to the United States Constitution.[1] According to Cardwell, the purported agreement to arbitrate her workplace injuries is not enforceable under Texas law.

*Motion to Compel Hearing*

At the inception of the motion to compel hearing, the trial court expressed to Whataburger's counsel that it was concerned about the arbitration agreement's requirement that arbitration occur in Dallas,[2] Cardwell's ability to afford pursuing her claim by arbitrating in

---

[1] The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. AMEND. X.

[2] Section 5.01 of the arbitration agreement contains a forum-selection clause which provides, "Any arbitrations taking place under this policy shall be held in Dallas, Texas unless the parties mutually agree in writing to a different location."

2

Dallas, Cardwell's Seventh Amendment right to a trial by jury, which the trial court considered to be absolute, and the issue of unconscionability.[3]   In response, Whataburger then agreed on the record to arbitrate Cardwell's claims in El Paso.

During the hearing, the trial court admitted into evidence the affidavit of Frank Gallarzo, General Manager for Whataburger, to which was appended Whataburger's arbitration "policy" as set forth in its employee handbook,[4] an "Acknowledgement Sheet," and a paycheck exemplar which contains the arbitration agreement language.[5]

The arbitration policy provides:

> All employees, by accepting employment or by continuing employment after the implementation of this Policy, shall be required to submit any legally recognized claim or dispute related to their employment, including workplace injury or disease or to the termination of their employment, to arbitration, rather than to litigation, according to this Policy and the rules established for its enforcement. . . . .   The Company, by implementing this Policy, and the employees, by accepting or continuing employment following implementation and notification of this Policy, waive the right to proceed in court and to a jury trial with regard to any legally recognized claim or dispute covered by this Policy. Employee understands and acknowledges that he/she is waiving his/her right to a jury trial.

The arbitration policy further provides that upon the occurrence of facts giving rise to a legally-recognized claim or dispute, Whataburger cannot unilaterally amend or modify the policy

---

[3]  The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."   U.S. CONST. AMEND. VII.

[4]  No party offered the employee handbook into evidence.

[5]  The paycheck exemplar states:
> Whataburger will submit to arbitration any legally recognized claim or dispute related to employment, including termination of employment, and workplace injury or disease claims, except as specifically excluded in paragraph 3.02 of the Whataburger Arbitration Policy.   By accepting or continuing employment, Whataburger employees agree to submit the same claims to arbitration. Each Whataburger employee has been provided a copy of the Arbitration Policy, and additional copies may be obtained from the Home Office Human Resource Department at (210) 476-6000.

or avoid its obligation to proceed to arbitration, if requested to do so, in the absence of the mutual consent of Whataburger and the employee. Under the arbitration agreement, Whataburger agrees that it will not alter, modify or amend its arbitration policy without first providing 30 days' advance written notice to all employees.

The "Acknowledgement Sheet" contained Cardwell's signature and her initials by two provisions: (1) one entitled, "Employee Handbook," which includes a statement that Cardwell understood that the information provided in the employee handbook was intended as a guide only and that its provisions are not conditions of employment and may be modified, revoked, changed, or deleted by Whataburger at any time without notice, and a statement that nothing in "this manual" is intended to create, nor is to be construed to constitute, a contract between Whataburger and any of its employees; and (2) one entitled, "Arbitration," which stated, "I understand that Whataburger Restaurants LLC will submit any legally recognized claim or dispute related to employment, . . . including workplace injury or disease claims, except as specifically excluded in paragraph 3.02 of the Arbitration Policy to arbitration and by accepting or continuing employment I shall be required to submit any legally recognized claims or disputes to arbitration." Cardwell did not present any testimony or evidence in support of any asserted defenses urged as a basis to deny enforcement of the arbitration agreement.

The trial court made several inquiries of Whataburger's counsel regarding the cost of arbitration, stated that it assumed that filing fees and jury fees had been paid, and asked Whataburger how much it was choosing to pay the American Arbitration Association (AAA). When Whataburger responded that it did not know the fees and was not choosing to pay anything, the trial court stated, "I assume that's a matter we can take judicial notice of; I would assume it's in

4

the range of a thousand dollars, possibly more." Whataburger indicated its belief that the fee was near $1,000. The trial court then asked how much Whataburger paid an arbitrator per day, and noted that although Whataburger could have a "free" trial, it was "choosing to pay thousands of dollars to select a different forum." In response to the court's inquiry about any reason it was choosing arbitration other than the expectation that the arbitration forum would be more friendly to Whataburger and less friendly to Cardwell, Whataburger responded that AAA is not more favorable in every forum, and noted that arbitration has the advantage of being less formal and more timely in resolving disputes. The trial court asked if a less formal forum is advantageous to a defendant. Observing that arbitration can be less costly in terms of attorneys' fees and costs for both parties, Whataburger noted that Cardwell could choose to work anywhere but had agreed to arbitrate, explained that Cardwell's agreement to arbitrate is a condition of her employment, and also noted that the arbitration could be resolved in twelve months. The trial court then offered to set a trial in six months and asked Whataburger what its basis was for spending "all this extra money, other than [the trial court's] suspicion that [Whataburger must] think one forum is going to be way more favorable to [it] than the other forum?" Observing that the trial court's assumption that arbitration was a more expensive option was incorrect, Whataburger reminded the trial court that what was at issue was the situation that existed at the time the parties agreed to arbitrate, not what was presently available to the parties in the form of a trial setting. Whataburger's counsel explained that he was not authorized to agree to try Cardwell's case and argued that the arbitration agreement should be consistently enforced as written and agreed by the parties.

Cardwell, in turn, argued among other things, that the arbitration agreement was illusory, substantively and procedurally unconscionable, and invalid, in part because she was not involved

5

in interstate commerce as required for FAA arbitration.

*Illusory*

Because Whataburger allegedly had the right to amend and modify the arbitration agreement at will, Cardwell argued it was illusory. Cardwell referred to the acknowledgement sheet that states the employee handbook is not a contract and that Whataburger can modify, revoke, change, or delete anything in the handbook at any time, and to the arbitration agreement which provides that it can be modified or amended by Whataburger unless the facts giving rise to the injury have already occurred in support of her argument. Whataburger observed that the employee handbook was not in evidence and conceded that if the arbitration agreement provided that Whataburger could change the arbitration agreement after an employee was injured, then the agreement would be illusory. However, Whataburger contended that because the arbitration agreement expressly states that the parties may not modify or amend any of the terms of the arbitration agreement after an injury has occurred, it is not illusory.

In response to the trial court's inquiry regarding Cardwell's powers to modify the terms of the arbitration agreement, Whataburger responded that under the arbitration agreement, if Whataburger chooses to modify the terms thereof, Cardwell is entitled to notice, and if she continues to work for Whataburger, she has then agreed to the terms of the agreement as modified. The trial court asked if an employee could inform Whataburger that Whataburger was going to have to change the terms of the agreement if it wanted to continue to employ her. Whataburger answered that it did not know if Cardwell had any powers to modify the terms of the agreement and was not aware of any employee ever making that request or whether such had been granted or not.

6

Cardwell also argued the agreement was illusory because Whataburger had retained the unilateral right to delete or terminate the arbitration provisions from the employee handbook under the provision expressly set forth in the acknowledgement sheet, which provides that the provisions of the employee handbook can be changed with or without notice. Cardwell argued that although the *Halliburton* limiting language is in the arbitration "policy," because there is no *Halliburton* savings clause in the acknowledgement sheet where Whataburger expressly states that the employee handbook may be amended at anytime without notice, the arbitration agreement is rendered illusory. *See In re Halliburton Co.,* 80 S.W.3d 566, 569 (Tex. 2002).

Whataburger countered that deletion of the arbitration provision from the employee handbook would violate the provisions of the arbitration policy which says that it cannot be amended after the injury has occurred. Cardwell contended that the trial court was required to look at all of the documents to harmonize the parties' intent, and argued that under the incorporation-by-reference doctrine, Whataburger evidenced an intent to make the provisions in the acknowledgement sheet a part of the arbitration agreement.

In response to the court's inquiry whether the employee handbook and the acknowledgement were physically in one notebook or separate documents distributed at different times, Whataburger explained that the acknowledgement is a separate document which "may be" attached to the back of the handbook and torn out. It then specified that the employee signs the acknowledgement, which is placed in the employee's personnel file, and the employee handbook is given to the employee to take home.

*Substantively Unconscionable*

Cardwell asserted that the agreement was never valid, was one-sided, and grossly favored

Whataburger because Cardwell could not afford to arbitrate in Dallas as required in the arbitration agreement and because she would be forced to forfeit her cause of action. The trial court stated if it did compel arbitration, it would compel that the arbitration proceedings take place in El Paso. However, Whataburger observed that it had agreed to arbitrate in El Paso rather than Dallas as required by the terms of the arbitration agreement. After Whataburger noted that under the arbitration agreement, both parties had waived a trial by jury, the trial court inquired about the rights lost by either party in proceeding to arbitration. Cardwell again identified the twelve-month restriction of the arbitration agreement which would permit her claim to be dismissed with prejudice, as well as "the FAA restriction," as rights or remedies lost. When the trial court asked if the parties' rights to damages would be limited in any way, Cardwell replied that she did not believe there was a limitation on damages if the parties proceeded to arbitration. Without offering any evidence in support, counsel stated that Cardwell earns $7.40 per hour and has an annual income of approximately $6,500. Cardwell argued that the arbitration agreement was unconscionable at the time she entered into it, but also admitted that she signed the acknowledgement form and conceded that she was not arguing any fraud or "inducement."

*Procedurally Unconscionable*

Noting that Cardwell is not well educated, does not earn much money, does not have a stable home life, and was looking for a job when she signed the arbitration agreement that is purportedly in fine print within the employee handbook, Cardwell's counsel argued that the disparate bargaining power between Cardwell and Whataburger renders the agreement procedurally unconscionable.

*Invalid*

8

Cardwell argued the agreement was invalid because it violated the Federal Arbitration Act due to "the restriction" on appellate remedies. Without conceding that the arbitration agreement was unconscionable or improper, or illegal, Whataburger countered that when a provision in an arbitration agreement is improper or unenforceable, the appropriate remedy is to strike the provision and compel arbitration, and proceed under the FAA, which, it argued, would not affect the purpose of the arbitration agreement. Cardwell responded that the trial court was required to consider whether she would have the rights and remedies available under the Federal Arbitration Act (FAA), and asserted that Whataburger had restricted her federal rights and remedies. She argued that under the arbitration agreement, if the arbitration is not concluded or settled or heard within twelve months, she would lose her case entirely, an event which would not occur in a trial. Cardwell also argued that her rights were more restrictive under the arbitration agreement than under the FAA provisions because under the FAA a party may request that a hearing "be moved," and noted that an arbitrator's ruling may be appealed if the hearing is not "moved" for sufficient cause. However, Cardwell complained that the arbitration agreement changed the FAA standard to provide that "moving a hearing" beyond the agreement's twelve-month rule was permitted only for "good cause," which Cardwell contends is more restrictive than the FAA's "sufficient cause" standard.

### Interstate Commerce

Cardwell asserted that the FAA requires that an employee must be involved in interstate commerce in order to apply, and she argued that she, a mere dishwasher, had nothing to do with interstate commerce, thus the FAA was inapplicable. Citing Section 171.002 of the Texas Civil Practice and Remedies Code, Cardwell further asserted that if the FAA is not applicable to her

9

claims, the Texas Arbitration Act (TAA) would apply but then contended that the arbitration agreement would be void as a matter of law under the TAA, because its provisions require that both parties and their attorneys must sign an arbitration agreement if it is to be binding in a personal injury case. TEX. CIV. PRAC. & REM. CODE ANN. § 171.002 (West 2011). After the trial court noted that Cardwell's attorney had not signed the arbitration agreement, Whataburger again urged that the FAA was applicable to the case, and the trial court observed that it thought interstate commerce involved anything that touched upon interstate commerce.

At the conclusion of the hearing, the trial court provided Whataburger an additional two weeks in which to respond to its concerns and Cardwell's written response to its motions, and instructed Whataburger's counsel to ask his client if it would consider litigating the case in the trial court if it could guarantee a fast trial setting. Counsel responded that there were several reasons why arbitration was preferred, including reduced attorney's fees, which counsel asserted would be higher in a trial setting than in an arbitration. The trial court then agreed to conduct telephonic conferences and discovery, and asked the parties if they would agree to a bench trial, noting that they would save a few thousand dollars that would otherwise be paid to an arbitrator, and observed that it could accommodate the parties' schedules. Whataburger's counsel agreed to take the offer to his client, and the trial court recessed the hearing.

*Post-Hearing Filings*

After the hearing, Whataburger filed a reply brief in support of its motions in which it argued that the U.S. Court of Appeals for the Fifth Circuit, in *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002), had determined that the Seventh Amendment of the U.S. Constitution was inapplicable to a valid arbitration provision that waives the right to resolve a

10

dispute through litigation in a judicial forum because the Seventh Amendment confers "only the right to have a jury hear the case once it is determined that the litigation should proceed before a court." The Fifth Circuit there noted that, "If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Id.* Whataburger again urged that the arbitration agreement, and Cardwell's waiver of her right to a trial by jury, were valid. Asserting that the agreement was not unconscionable, Whataburger again posited that if a provision of the agreement was found to be illegal or unconscionable, the proper remedy was to sever the provision and compel arbitration pursuant to the agreement. Citing this Court's opinion in *In re ReadyOne Industries, Inc.*, 294 S.W.3d 764, 769 (Tex.App.–El Paso 2009, orig. proceeding), Whataburger also noted that Cardwell's argument regarding the lack of an interstate-commerce nexus was irrelevant because the parties had expressly agreed to arbitrate claims under the provisions of the FAA. *See id.* (if the parties expressly choose for their arbitration agreement to be governed by the FAA, the agreement should be enforced regardless of the parties' nexus to interstate commerce). Referencing *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 423-24 (Tex. 2010), Whataburger argued that enforcement of the arbitration agreement would not violate the Tenth Amendment, and observed that the Texas Supreme Court had determined that an agreement to arbitrate was neither a waiver of a cause of action nor of the pre-injury waiver rights provided under the Texas Labor Code but was merely an agreement that those claims should be tried in a specific forum. Whataburger noted that Section 3 of the FAA requires a trial court to stay proceedings upon determining that the issues raised in the complaint are referable to arbitration, and urged that dismissal of the claims is proper when all claims presented are subject to arbitration.

In her letter response, Cardwell alleged that the arbitration agreement is unconscionable because: (1) it limits "the duration of the arbitration proceedings to twelve months resulting in a dismissal with prejudice;" (2) its "limitations on the remedies available to the Plaintiff on the finality of the arbitrator's award" are restrictive; and (3) it requires Cardwell to pay for the presentation of all witnesses to the incident to appear at the arbitration in Dallas. Cardwell argued that Whataburger could use the twelve-month limitation in the arbitration agreement to its benefit by delaying both the case proceedings and discovery to achieve dismissal of her claim with prejudice, in hindrance of her rights and remedies. Without citation to authority, she further asserted that the arbitration agreement provided more restrictive limitations on her remedies regarding the finality of the arbitrator's award than the minimum rights accorded under the FAA. Cardwell pointed out that Whataburger did not address her argument that the requirement that she arbitrate in Dallas was unduly prejudicial or that the terms of the arbitration agreement and the acknowledgement sheet render the agreement illusory. Finally, contending that the arbitration agreement is "riddled with invalid provisions designed to unfairly benefit Whataburger[,]" Cardwell argued that the severability of an illegal or unconscionable provision is not always a proper remedy, and reurged the trial court to deny Whataburger's motions.

*Order with Findings of Fact and Conclusions of Law*

The court's order set out findings of fact and conclusions of law, and denied Whataburger's motion to compel arbitration.[6] The trial court judicially noticed the fee schedules which "were

---

[6] Within its order denying Whataburger's motion to compel with findings of fact and conclusions of law, the trial court expressly found, among other things, that:

    (1) Whataburger was the sole creator of the arbitration policy, which was sixteen paragraphs long and located on pages 22 and 23 of the 50-page employee handbook, and that Cardwell was not involved in proposing or negotiating the terms of the agreement;

    (2) provisions in the employee handbook and the acknowledgement sheet may permit Whataburger, but not Cardwell, to modify, revoke, change, or delete the arbitration policy under some circumstances;

printed from the American Arbitration Association (AAA) website" and attached to its order, and after conducting its own "brief study," judicially noticed that a three-day arbitration would result in arbitration fees exceeding $12,000.

The trial court entered ten "conclusions of law." After expressing its dissatisfaction of policies favoring arbitration and eliminating jury trials, and observing that it is bound by precedent, the trial court expressly concluded that Whataburger's arbitration agreement is unconscionable and that the "facts and the record in this case overwhelmingly show unconscionability." In its remaining conclusions the trial court stated:

> 5. It is hard for this Court to think of anything more repulsive than perpetuating a system that lets large corporations lavishly buy their way out of judicial accountability and into a system more favorable to their side.

---

(3) Cardwell or her legal counsel had paid $305 in jury and filing fees and that no further forum fees would accrue to either party if Cardwell's case proceeded to trial;

(4) numerous, extremely large fees would accrue to Whataburger if the case proceeded to arbitration;

(5) the AAA standard schedule of arbitration filing fees range from $975.00 to $71,000.00, and the flexible schedule of filing fees range from $1,075.00 to $75,500.00;

(6) although Cardwell had not pleaded a specific dollar amount in damages and punitive damages, if the claim exceeds $300,000.00, the standard fee would be $6,100.00 and the flexible fee would be $6,650.00, and if her claim exceeds $500,000.00, the respective fees would be $8,700.00 and $9,500.00;

(7) "[t]hese exorbitant filing fees are only part of the additional (and completely unnecessary) fees that Whataburger is asking to pay[; t]he Website makes clear that Whataburger will have to pay the expenses [and fees];"

(8) upon conducting its own brief study, and as judicially noticed by the trial court, arbitrator's fees range from $300.00 to $400.00 per hour or more and the AAA adds its additional $50 surcharge, and a "three day trial" would exceed $12,000.00 in arbitrator fees;

(9) if it granted Whataburger's motion to compel, Whataburger would pay the recited fees and costs, Cardwell would lose her constitutional right to a trial by jury, and a single arbitrator would act as judge and jury;

(10) despite the trial court's offer to have a non-jury trial without paying any forum fees, Whataburger wants to pay approximately $20,000.00 for an arbitrator to consider the claims at a later hearing for "no conceivable reason . . . other than Whataburger's belief that it will fare much better, and Ms. Cardwell will fare much worse, before an arbitrator;"

(11) assuming Whataburger acts in its own self interest, it would never insist on paying arbitral forum fees in every employee claim absent a high level of certainty that it would save more than that by eliminating or limiting employee recoveries;

(12) Whataburger, AAA, and arbitrators profit handsomely "from this arbitration policy [and] [t]he inescapable conclusion is that those profits come from precluding dishwashers from receiving the compensation they could otherwise obtain in the judicial system[;]" and

(13) the preceding conclusion is confirmed by Whataburger's pretextual argument in support of arbitration, that attorneys' fees at trial are high, which is conclusory, a "totally unsupported allegation,"and not credible.

13

6. Another unconscionable part of the policy is paragraph 5.01 which states that all arbitration hearings shall take place in Dallas unless the parties otherwise agree in writing. Obviously, Whataburger employees earning $7.40 per hour in El Paso would never be able to go to Dallas and bring witnesses there. [footnote omitted].

7. There was no written agreement to waive the Dallas provision, but counsel for Whataburger conceded, at the hearing, that this particular arbitration could occur in El Paso. [citation omitted].

8. If Whataburger were ever to use the Dallas requirement to preclude an employee from pursuing a claim, that would be unconscionable. If Whataburger would always waive it and allow employees to have a hearing in their home community, then the Court can think of no reason to have it in the policy other than to discourage employees, and plaintiff's lawyers, from bringing claims in the first place. That is also unconscionable.

9. Still another unconscionable part of the policy is the lie contained in paragraph 101, the very first paragraph in the policy which states "Arbitration has the advantages of being less formal and getting the dispute resolved more quickly and at less expense". [emphasis supplied by trial court]. In this case Whataburger could proceed to trial more quickly with no costs, but, instead, is asking to pay approximately $20,000.00 for a slower process so that it can buy an AAA fact finder. If such conduct, which appears to be what the 7th Amendment was designed to prevent, is allowed, then employers should, at the very least, be required to honestly reveal that truth to employees. Affirmatively lying about it in the policy is unconscionable.

10. Plaintiff raises other arguments as to why the arbitration policy is unconscionable which the Court need not consider at this time. Paying approximately $20,000.00 to purchase a more favorable fact finder and lying to employees about why you are doing it is all the unconscionability this Court needs.

**DISCUSSION**

In its sole issue on appeal, Whataburger argues in four sub-issues that the trial court abused its discretion when it denied its motion to compel arbitration and motion to dismiss Cardwell's lawsuit. Cardwell responds that this Court should affirm the trial court's order denying the motion to compel because the arbitration agreement is illusory and unenforceable under Texas law.[7] However, the trial court's order does not find the arbitration agreement to be invalid nor does it conclude that the arbitration agreement is illusory. Had the trial court made such

[7] In her petition, Cardwell argued that the arbitration agreement is not valid because it is illusory.

14

determinations, it would have no need to decide, as it did, whether the arbitration agreement was unconscionable.[8] Because the trial court's order expressly denies Whataburger's motion to compel arbitration on the sole basis that the arbitration agreement is unconscionable, we accordingly restrict our review and determine whether Cardwell established, as a defense, the unconscionability of the arbitration agreement by which the trial court could properly deny Whataburger's motions. Because Cardwell did not meet her burden, we conclude the trial court abused its discretion when it denied Whataburger's motions.

*Standard of Review*

Unconscionability is a question of law which we review *de novo* under an abuse of discretion standard. *See In re Poly–America, L.P.,* 262 S.W.3d 337, 348–49 (Tex. 2008)(whether contract is unconscionable when formed is question of law which is reviewed *de novo*); *Delfingen US-Texas, L.P. v. Valenzuela,* 407 S.W.3d 791, 800 (Tex.App.—El Paso 2013, no pet.)(citations omitted). The determination of the facts relevant to the question of unconscionability is a question for the trial court. *Delfingen US-Texas, L.P.*, 407 S.W.3d at 798. We do not engage in our own factual review, but decide whether the record supports the trial court's resolution of factual matters. *Id*. at 799-800. If it does, we are not at liberty to disturb the trial court's determinations of fact. *Id.* at 800. We instead determine whether the trial court properly applied the law to the facts in reaching its legal conclusion. *Id.* Because a trial court has no discretion to determine what the law is or to apply law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion. *See In re Poly–America, L.P.,* 262 S.W.3d at 348; *Lucchese Boot Co. v. Licon*, 388 S.W.3d 365, 372 (Tex.App.–El Paso 2012, no

---

[8] We observe that Cardwell filed no cross-appeal challenging the trial court's findings and conclusions or complaining of the omission of findings and conclusions.

15

pet.)(citation omitted).    It is implicit that a fact finder's affirmative fact finding must be supported by sufficient evidence.  *See Granado v. Meza*, 398 S.W.3d 193, 193 (Tex. 2013)(trial court's determination of child support arrearages must be set aside if no evidence supports it); *Chavez v. Chavez,* 148 S.W.3d 449, 456 (Tex.App.–El Paso 2004, no pet.)(appellant may challenge the trial court's findings of fact for legal and factual sufficiency of the evidence); *Keenan v. Aguilar*, 391 S.W.3d 620, 624 (Tex.App.–El Paso 2012, no pet.).

In evaluating an unconscionability defense, the Texas Supreme Court has recently observed that "[t]he Uniform Commercial Code provides that a court should afford the parties a reasonable opportunity to present evidence as to a contract's commercial setting, purpose and effect to aid the court[.]"  TEX. BUS. & COM. CODE ANN. § 2.302(b) (West 2009); *Venture Cotton Co-op v. Freeman*, No. 13-0122, 2014 WL 2619535, at *4 --S.W.3d --, -- (Tex. 2014).    Under the UCC, the court is to make a highly fact-specific inquiry into the circumstances of the bargain, such as the commercial atmosphere in which the agreement was made, the alternatives available to the parties at the time and their ability to bargain, any illegality or public policy concerns, and the agreement's oppressive or shocking nature when determining unconscionability.  *Venture Cotton Co-op*, 2014 WL 2619535, at *4.

"Courts should also use care not to intrude upon arbitral jurisdiction under the guise of an unconscionability defense."    *Id*. at *7-8 (addressing trial court's determination of unconscionability based on the rights of one party to recover attorney's fees in violation of the other party's statutory right to attorney's fees, and determining that a contract which fails to provide reciprocal rights to attorney's fees is not unconscionable per se).    The crucial inquiry in determining unconscionability is "whether the arbitral forum in a particular case is an adequate

16

and accessible substitute to litigation" where a litigant's rights can be effectively litigated. *Id*. at *7, *citing In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 894 (Tex. 2010). However, that inquiry is satisfied not by speculation but by specific proof in the particular case of the arbitral forum's inadequacy. *In re Olshan Found. Repair Co.*, 328 S.W.3d at 896. Moreover, arbitration provisions "should not be held unconscionable based on speculation about their potential effect." *Venture Cotton Co-op*, 2014 WL 2619535, at *8, *citing PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003). A strong federal presumption favors arbitration when authority over the matter is unclear. *Venture Cotton Co-op*, 2014 WL 2619535, at *8, *citing In re Poly-America, L.P.*, 262 S.W.3d at 348.

*Applicable Law*

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 605 (Tex. 2005); *Inland Sea, Inc. v. Castro,* 420 S.W.3d 55, 58 (Tex.App.–El Paso 2012, pet. denied). While the FAA preempts application of state law that would render an existing arbitration agreement unenforceable, it does not preempt application of state law to determine the existence of an arbitration agreement. *See In re Halliburton Co.,* 80 S.W.3d at 568–73 (applying FAA to compel arbitration after determining arbitration agreement existed under substantive Texas law).

Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcement. *See In re AdvancePCS Health L.P.,* 172 S.W.3d at 607; *Inland Sea, Inc.,* 420 S.W.3d at 58; *IHS Acquisition No. 171, Inc. v. Beatty–Ortiz,* 387

17

S.W.3d 799, 810 (Tex.App.–El Paso 2012, no pet.)(because the law favors arbitration, burden of proving defense to arbitration is that of party opposing it). Defenses to the enforcement of an arbitration agreement refer to unconscionability, duress, fraudulent inducement, and revocation. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756 (Tex. 2001); *IHS Acquisition No. 171, Inc.,* 387 S.W.3d at 810.

Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law. *In re Poly–America, L.P.,* 262 S.W.3d 337, 348 (Tex. 2008)(orig. proceeding). An arbitration agreement is invalid if it is unconscionable. *See In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677–79 (Tex. 2006); *In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex. 2002). Unconscionable contracts, whether relating to arbitration or not, are unenforceable under Texas law. *In re Poly–America, L.P.,* 262 S.W.3d at 348. There is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and Texas law has historically favored agreements to resolve such disputes. *Id.*

Whether an arbitration agreement is unconscionable is a determination to be made in light of a variety of factors. *Delfingen US-Texas, L.P.*, 407 S.W.3d at 798 (citations omitted). In determining whether a contract is unconscionable, we must examine (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Id.* We assess the totality of the circumstances as of the time the contract was formed. *Id.*; *El Paso Natural Gas Company v. Minco Oil & Gas Company,* 964 S.W.2d 54, 60–61 (Tex.App.–Amarillo 1997), *rev'd on other grounds,* 8 S.W.3d 309 (1999).

18

Unconscionability may be either substantive or procedural in nature. *In re Halliburton Co.,* 80 S.W.3d at 571. Substantive unconscionability concerns the fairness of the arbitration provision itself. *Id.* A contract is substantively unconscionable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly–America, L.P.,* 262 S.W.3d at 348 (quoting *In re FirstMerit Bank,* 52 S.W.3d 749, 757 (Tex. 2001)(orig. proceeding)); *see also In re Halliburton Co.,* 80 S.W.3d at 571. Procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision and relates to the making or inducement of the contract, and our focus is on the facts surrounding the bargaining process. *In re Halliburton Co.,* 80 S.W.3d at 571. The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede, and the same is true for procedural abuse—the circumstances surrounding the negotiations must be shocking. *Delfingen US-Texas, L.P.*, 407 S.W.3d at 798 (citations omitted); *El Paso Natural Gas Co.,* 964 S.W.2d at 62.

*Cardwell's Defenses and the Trial Court's Finding of Unconscionability*

*Procedural Unconscionability*

Contending that Whataburger "created an atmosphere that attempted to minimize the possibility of any new hire questioning the arbitration agreement in any way," Cardwell asserted in her petition that the arbitration agreement is procedurally unconscionable because Whataburger took advantage of her disparate bargaining ability by disguising "the term of an arbitration agreement in fine . . . print buried in an employee manual." Cardwell also complained that "the disparate bargaining power of the parties was grossly inadequate as [she] was in no position to

19

refuse . . . [to] be hired." However, we note that the trial court did not conclude the arbitration agreement was unconscionable on this basis.

*Substantive Unconscionability*

*Section 7.01*

Cardwell specifically complained in her petition about Section 7.01 of the arbitration agreement, which provides that after arbitration has been requested, the arbitration must be completed within twelve months or it will be dismissed with prejudice for want of prosecution unless good cause is shown in support of her claim of substantive unconscionability. According to Cardwell, Section 7.01 "invalidates the arbitration policy" because it creates a limitation on her ability to conduct discovery and prosecute her case, is grossly one-sided as to render the entire agreement unconscionable, and its requirement that the subjective standard of good cause be applied to avoid dismissal with prejudice if "the litigation" exceeds one year, limits her substantive rights and remedies and imposes a higher standard than that provided under the FAA. *See* 9 U.S.C.A. § 10(a)(3). The trial court did not conclude the arbitration agreement is unconscionable on this basis.

*Section 6.01*

Cardwell next complained of Section 6.01 of the arbitration agreement, which provides that "[e]xcept where it may be shown that the arbitrator's award was procured by fraud or corruption, or where the arbitrator has demonstrated evident partiality or misconduct sufficient to substantially prejudice the rights of one or more of the parties, or where the arbitrator's award shows manifest disregard for the governing law or for this [agreement], the award rendered by the arbitrator shall be final, binding and unappealable." She asserted that Section 6.01 violates the

20

law and is invalid because it restricts her rights and remedies as provided by Section 10(a) of the FAA.[9]  *See* 9 U.S.C.A. §10(a).   Again, the trial court did not conclude the arbitration agreement was unconscionable on this basis.

*Section 5.01*

Cardwell also complained that Section 5.01, the arbitration agreement's forum-selection clause, which requires that arbitration under the agreement shall take place in Dallas unless the parties mutually agree in writing to another location and requires that witness expenses shall be borne by the party calling said witness, "renders the entire agreement invalid."   Noting, without supporting evidence, her limited income of less than $7,000 per year, her residence in a homeless shelter, and the expense of flying her witnesses to the events giving rise to Cardwell's claims to Dallas from El Paso, Cardwell alleged that the excessive costs arising from the arbitration agreement's forum-selection clause set out in Section 5.01 would deter her from seeking her full rights and remedies as she could not afford them.[10]   For these reasons, Cardwell asserted that the arbitration agreement is invalid because it is substantively unconscionable and grossly one-sided

---

[9]  Section 10 of the FAA, which addresses instances in which an arbitration award may be vacated, provides:
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
(c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.   9 U.S.C.A. § 10.

[10] Cardwell's affidavit, which was attached to her written response and specified her income and anticipated costs of arbitration in Dallas, was never offered into evidence nor admitted.

in favor of Whataburger. The trial court did make certain conclusions of law of unconscionability relating to the forum-selection clause.

*Whataburger's Challenges*

Whataburger has challenged, among others, the trial court's conclusions of law finding unconscionability based on the forum-selection clause. The trial court's sixth conclusion of law determined that the forum-selection clause of Section 5.01 is unconscionable, but in the seventh conclusion of law acknowledged that Whataburger had agreed during the motion to compel hearing to conduct arbitration in El Paso. Whataburger contends the trial court abused its discretion in entering its sixth conclusion of law because an agreement on the record to arbitrate in El Paso renders the unconscionability, allegedly arising from the forum-selection clause, moot. We agree.

Rule 11 permits an agreement between attorneys or parties to be enforced if it is either in writing, signed and filed with the papers as part of the record, or made in open court and entered of record. TEX. R. CIV. P. 11. Because Whataburger's on-the-record agreement to arbitrate in El Paso was made in open court, we hold the forum-selection clause as a basis for concluding the arbitration agreement was unconscionable was rendered moot and no longer existed at the time the trial court entered its conclusion.

Moreover, we observe the trial court's eighth "conclusion of law," which has as its basis future actions by Whataburger, is in the nature of an advisory opinion. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993)("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties."). The Texas Supreme Court has construed the separation of powers article of the Texas Constitution "to

22

prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial department." *See* TEX.CONST. art. II, § 1; *Texas Ass'n of Bus.,* 852 S.W.2d at 444.

We next consider Whataburger's challenges to the trial court's fifth and ninth conclusions of law. Appellant correctly notes that Cardwell did not urge either of these assertions to the trial court for determining that the arbitration agreement is unconscionable and never offered or submitted any evidence, argument, or briefing in support.

The trial court's fifth and part of its ninth conclusions of law were based on facts not presented as evidence by any party, but rather as the court states on the trial court's own post-hearing independent "study." Even if the trial court's judicial notice of the AAA fees and costs was proper, there was no evidence before the trial court to show the fees or costs that would be specifically applicable to an arbitration proceeding between these parties. *Cf. In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757 (party opposing arbitration agreement as unconscionable on ground that arbitration will subject party to substantial costs and fees must prove likelihood of incurring such costs by presenting some specific information of future costs; absent evidence of specific information of what arbitration costs would be or that party would actually be charged excessive arbitration fees, Texas Supreme Court determined requirement of three-arbitrator panel in arbitration agreement was not evidence of unconscionability and evidence was legally insufficient to show party would be denied access to arbitration based on excessive costs), *citing Green Tree Fin. Corp-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000).

Whataburger also challenges the trial court's ninth conclusion of law determining unconscionability on the ground that Whataburger "lies" to its employees. Cardwell never

23

asserted or presented any evidence establishing that the statement regarding the benefits of arbitration as set out in Section 1.01 of the arbitration agreement is untrue, as the trial court concluded after conducting its own "brief study." Indeed, we observe that many of the "facts" found by the trial court were never presented through evidence or testimony, and some were never even addressed during the hearing.

Whataburger notes that Cardwell argued only some of her defenses in opposition to its motion to compel arbitration to the trial court during the hearing, and Cardwell acknowledged during the hearing that some of her arguments and assertions were brought only for purposes of appeal. Out of an abundance of caution, Whataburger has addressed these other matters in its brief. However, as the trial court did not base its determination of unconscionability on those grounds, we need not consider them.

The trial court's determination of unconscionability is founded upon bases that Cardwell did not raise. The record does not support the trial court's resolution of factual matters regarding the costs of arbitration for these parties, and the trial court's resolution of factual matters is unsupported, as it must be, by evidence in the record. *Delfingen US-Texas, L.P.,* 407 S.W.3d at 800. Because the trial court's clear failure to properly analyze and apply the law of unconscionability constitutes an abuse of discretion, Whataburger's sole issue on appeal is sustained. *See In re Poly–America, L.P.,* 262 S.W.3d at 348; *Delfingen US-Texas, L.P.,* 407 S.W.3d at 800.

**CONCLUSION**

The trial court's order denying Whataburger's Motion to Compel Arbitration and Motion to Dismiss is reversed and the case is remanded to the trial court with instructions to grant the

motion and enter an order compelling arbitration and staying the proceedings in Cardwell's case.


ANN CRAWFORD McCLURE, Chief Justice

October 24, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating