

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00240-CV

ECOM USA, INC. AND U.S. COTTON GROWERS ASSOCIATION, APPELLANTS

V.

DAVID LYNN CLARK AND ASHLEY LYN CLARK, PATSY MARIE CLARK, RANDY CRAIG COLEMAN AND SANDRA JO COLEMAN, WILLIAM RONALD COLEMAN AND JODI A. COLEMAN, APPELLEES

On Appeal from the 286th District Court
Cochran County, Texas
Trial Court No. 13-05-4320, Honorable Pat Phelan, Presiding

February 25, 2015

Memorandum Opinion

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This interlocutory appeal involves the district court's refusal to compel David Lynn Clark, Ashley Lyn Clark, Patsy Marie Clark, Randy Craig Coleman, Sandra Jo Coleman, William Ronald Coleman and Jodi A. Coleman (collectively referred to as the Farmers) to submit their claims against ECOM USA, Inc. and U.S. Cotton Growers Association (USCGA) to arbitration. The Farmers had contracted to deliver cotton they grew for the 2010 and 2011 crop years to USCGA, a marketing pool owned and

administrated by Ecom. Dispute arose as to the performance of those agreements, and the Farmers sued Ecom and USCGA. Their causes of action included breached contract, fraud, violations of the Texas Deceptive Trade Practices Act, conversion, negligent misrepresentation, breached fiduciary duty, conspiracy, and civil theft. They also sought an accounting and a declaratory judgment.

According to the record, each contract at issue contained a provision stating that "any and all disputes arising between" the parties "shall be resolved . . . exclusively by binding arbitration pursuant to the arbitration rules of the American Cotton Shippers Association."[1] Per that clause, Ecom and USCGA moved the trial court to compel the parties to arbitrate. Instead of doing so, it "conclude[d] that the arbitration agreements . . . [were] unconscionable, unenforceable, and void." Ecom and USCGA appealed, contending that the trial court erred in so ruling. We reverse and remand.

When the trial court acted, it did not have the benefit of the Texas Supreme Court's opinion in *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222 (Tex. 2014). That case involved farmers who contracted to sell their cotton through a cooperative marketing pool and who eventually sued the marketing pool. Like the situation at bar, each contract also had arbitration clauses which the farmers attacked as unconscionable. When the marketing pool sought to enforce those clauses, the trial

---

[1] The entire clause reads as follows:

> The Member, the Agent (in the event one has been appointed by the Member) and USCGA agree that any and all disputes arising between or among them or Ecom USA, Inc. ("Ecom") shall be resolved by exclusively by binding arbitration pursuant to the arbitration rules of the American Cotton Shippers Association. Unless otherwise agreed, all arbitration proceedings shall take place in Dallas, Texas or Memphis Tennessee. Notwithstanding the foregoing, in the event of a breach or threatened breach of this Agreement by the Member or Agent that would cause irreparable harm to USCGA or Ecom shall be entitled to injunctive relief in lieu of proceeding to arbitration. The prevailing party in any arbitration or injunction proceeding shall be entitled to recover as a part of its remedy its costs and expenses, including, but not limited to, reasonable attorneys' fees.

court held them unconscionable. *Id.* at 225. The intermediate appellate court affirmed the decision. *Id.* So, the dispute came before the Supreme Court.

The farmers in *Venture* argued that the arbitration provisions were unconscionable because 1) they "were one-sided and designed to foster arbitrator bias," 2) the summary nature of the arbitration rules "denied them adequate discovery and preparation time," 3) "arbitration was too expensive and . . . its prospective cost would prevent them from vindicating their rights in the arbitral forum," and 4) the "agreement and ACSA rules violated the state's public policy by illegally eliminating their statutory right to attorney's fees and other remedies under the Texas Consumer Protection— Deceptive Trade Practices Act (DTPA)." *Id.* at 228-29. Of those issues, only the latter was considered. And, the Supreme Court agreed that since the arbitration provision could be read as waiving remedies afforded under the DTPA and the waiver did not comport to the requirements of that Act, it was invalid because it transgressed public policy. *Id.* at 230.

Yet, the invalidity of that aspect of the American Cotton Shipper Association rules (which the parties were obligated to follow under the arbitration clause) did not necessarily warrant a holding that arbitration was unconscionable. Rather, the court observed that an illegal or unconscionable provision of a contract may generally be severed if it does not constitute the essential purpose of the agreement. *Id.* at 230, *quoting, In re Poly-America, L.P.*, 262 S.W.3d 337 (Tex. 2008). So too did it note that 1) when "determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions'" and 2) an arbitration agreement's essential purpose is "to provide for a speedy and

efficient resolution of disputes to ensure timely performance under the contract." *Id.* It then concluded this aspect of the opinion by stating that "[t]he agreement's collateral effect on statutory rights and remedies appears to be a peripheral concern to this essential purpose." *Id.* So, the "objectionable limitation" did not render unconscionable the obligation to arbitrate; it could simply be severed or eliminated. *Id.* at 230-31. This, however, was not the end of the court's commentary.

It continued by observing that unconscionability "typically involves a broader inquiry". *Id.* at 233. The analysis is made "'in light of a variety of factors, which aim to prevent oppression and unfair surprise.'" *Id.*, *quoting, In re Poly-America*, *supra*. That "light" concerns the contract's "'setting, purpose, and effect.'" *Id., quoting,* RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a. Consequently, the trial court "should consider 'the parties' general commercial background and the commercial needs of the particular trade or case' when determining whether 'the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Id., quoting, In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010).

Also encompassed within this framework is the relative bargaining power of the parties. RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. d. It is not enough that the parties have unequal bargaining power, or that inequality results in an allocation of risks to the weaker party. *Id.* The disparity, at the very least, must be gross and coupled with terms unreasonably favorable to the stronger party. *Id.* This is so because courts must recognize that parties are free to negotiate their own bargains, and that includes the freedom to strike unwise or foolish deals and create hardships for themselves. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d at 228; *see Cross-Timbers Oil Co. v. Exxon*

*Corp.* 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.) (observing that "the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner *they* choose"). It is when the bargain is grossly unfair that the freedom to negotiate is overcome by the need to render it unenforceable. *See Venture Cotton Coop. v. Freeman*, 435 S.W.3d at 228 (stating that "this notion that parties are free to negotiate their own bargains conflicts with the equally compelling notion that grossly unfair bargains should not be enforced"). So, pertinent to assessing whether the balance so tips in any particular case are such things as the "commercial atmosphere in which the agreement was made, the alternatives available to the parties at the time and their ability to bargain, any illegality or public-policy concerns, and the agreement's oppressive or shocking nature." *Id.*

The balance is not an easy one to strike. As can be seen from what we said above, conflicting policies are at play. And, another that cannot be ignored is that favoring arbitration as a means to timely and efficiently resolve disputes. *See In re Olshan Foundation Repair, L.L.C.,* 328 S.W.3d at 892 (stating that "arbitration is favored in both federal and Texas law"). Arbitration is not *per se* unconscionable. *Id.* So, caution must be taken to avoid placing the bar too low in deciding whether clauses like that before us are unconscionable. *Id.*

Much like the farmers in *Venture*, the Farmers at bar "emphasized potential abuses and unequal treatment under the arbitral process" in complaining about the unconscionability of the arbitration clause. That is, they alleged below that arbitration clauses are unenforceable when "1) the causes of action pled cannot be effectively arbitrated; 2) the damages pled cannot be awarded or recovered [via arbitration]; 3)

5

effective development and presentation of the case is not allowed [in arbitration]; and 4) the arbitrators are impartial." So too did they posit that those circumstances existed here. Indeed, their evidence focused on those four criteria. Due to that focus, though, little was said about the parties' general commercial background and commercial needs of the particular case. So too were other pivotal indicia ignored, such as 1) the commercial atmosphere in which the agreement was made, 2) the alternatives available to the parties at the time they executed the contracts, and 3) the ability of the Farmers to bargain.[2] Whether the Farmers actually knew of the ramifications of agreeing to arbitrate and the limitations placed upon their ability to seek redress through the court system garnered little attention as well. That is also a matter of concern since knowing of the limitations about which they complain while raising no objection before executing the agreements merits consideration in the overall equation.[3]

The curtailed nature of the inquiry is also reflected in the trial court's findings of fact and conclusions of law. The document said nothing of the indicia mentioned in the preceding paragraph and deemed important by the Supreme Court in *Venture*. Given these circumstances, the inquiry discussed in *Venture* was incomplete.

Unconscionability is a question of law which we review *de novo* under an abuse of discretion standard. *See In re Poly-America, L.P.*, 262 S.W.3d at 349 (whether a

---

[2] That the Farmers intended to pursue such a narrow approach and omit development of the indicia about which we speak is exemplified in this representation to the trial court: "[W]e're not arguing about contract formation. We're not arguing about who signed it or who read it or all those things that you see a lot of times when we're talking about an arbitration agreement."

[3] For instance, the Farmers complain of the location at which the arbitration was to occur and the expense inherent in proceeding there. But, the arbitration clause itself disclosed that it was to be held in either Dallas, Texas or Memphis, Tennessee, and the Farmers signed it anyway. Did they object? Did they have opportunity to negotiate the point? Both are unknown at this time. If they did, however, and opted to withhold their complaint, one could legitimately question whether policy would allow them to now be freed from the limitation.

contract is unconscionable when formed is a question of law which is reviewed *de novo*); *Whataburger Rests., LLC v. Cardwell*, 446 S.W.3d 897, 908 (Tex. App.—El Paso 2014, pet. filed). The resolution of fact issues relevant to the decision is a matter for the trial court. *Whataburger Rests., LLC v. Cardwell*, 446 S.W.3d at 908. Yet, we are free to determine whether the trial court properly applied the law to the facts. *Id*. Finally, the failure to properly analyze or apply the law in general or the law of unconscionability, in particular, constitutes an instance of abused discretion. *In re Poly-America, L.P.*, 262 S.W.3d at 349.

Here, the narrow approach undertaken by the Farmers and adopted by the trial court evinced an incomplete and improper analysis of the issue. Thus, the trial court abused its discretion in refusing to compel arbitration due to the purported unconscionability of the arbitration clause. We reverse the trial court's decision and remand the cause for further proceedings in light of the Supreme Court's opinion in *Venture*.

Brian Quinn
Chief Justice

7