

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WHATABURGER RESTAURANTS LLC, | § | No. 08-13-00280-CV |
| | § | Appeal from |
| Appellant, | § | |
| | § | County Court at Law No. 7 |
| v. | § | |
| | § | of El Paso County, Texas |
| YVONNE CARDWELL, | § | |
| | § | (TC # 2013DCV0910) |
| Appellee. | § | |

## **O P I N I O N**

This is an interlocutory appeal from the denial of a motion to compel arbitration. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.016 (West 2015)(permitting an interlocutory appeal from the denial of a motion to compel arbitration under the Federal Arbitration Act). The trial court denied the motion based on extensive findings supporting some of Yvonne Cardwell's claims that the arbitration agreement is unconscionable. When we first heard this case, we sustained Whataburger's contention that the trial court erred in its unconscionability analysis. *Whataburger Restaurants LLC v. Cardwell*, 446 S.W.3d 897, 912-13 (Tex.App.--El Paso 2014), *reversed,* 484 S.W.3d 426 (Tex. 2016). On petition for review, Yvonne Cardwell did not challenge that part of our opinion, but rather she successfully claimed before the Texas Supreme Court that we erred in

not addressing her other reasons to deny arbitration that the trial court had not ruled on. *Id*. at 428.

We now take up those additional arguments.

Our prior opinion sets out the full procedural and factual background. Relevant to the issues before us, it is enough to state that Cardwell claims she was injured while working in the course and scope of her employment with Whataburger when an object struck her on the head. She filed suit alleging a common law negligence cause of action against Whataburger, which is a non-subscriber under the Texas worker's compensation system. Whataburger answered and then moved to compel arbitration.

Whataburger supported the motion to compel arbitration with the affidavit of Cardwell's general manager. According to the affidavit, the manager provided Cardwell at the time of hire with Whataburger's arbitration policy that was contained within the Employee Handbook. The policy appears on pages twenty-two and twenty-three of the handbook, under a bold header titled "Texas Arbitration Policy." The policy contains sixteen numbered paragraphs (1.01 to 7.05) which comprehensively set out the terms of the policy.

The core of the agreement provides:

> 2.01 All employees, by accepting employment or by continuing employment after the implementation of this Policy, shall be required to submit any legally recognized claim or dispute related to their employment, including workplace injury or disease or to the termination of their employment, to arbitration, rather than to litigation, according to this Policy and the rules established for its enforcement. The Company similarly shall be required to proceed to arbitration on all matters properly brought for arbitration by employees and former employees pursuant to this Policy.

The policy has a specific provision that addresses when Whataburger could, and could not, alter this policy:

> The duty imposed on both the Company and on employees to arbitrate all legally recognized claims or disputes arising from the employment relationship shall continue beyond, and not be affected by, the termination of an employee's employment. Moreover the company shall have no right, once the facts giving rise

2

to the legally recognized claim or dispute have occurred, to unilaterally amend or modify this Policy or otherwise avoid its obligation to proceed to arbitration if requested to do so in the absence of mutual consent of the Company and the Employee. Whataburger, Inc. will not alter, modify or amend this Policy without first providing all employees with 30 days advanced written notice. An Employee who chooses to continue employment for at least thirty (30) days after receiving written notice of an amendment or modification of the Policy shall be deemed to have consented.

At the time she was hired, Cardwell signed an "Acknowledgement Sheet" where she made four distinct acknowledgements. Relevant here, she acknowledged receipt of the Employee Handbook. That acknowledgment states:

> EMPLOYEE HANDBOOK: I understand that the information provided in the Employee Handbook is intended to be used as a guide only. Its provisions are not conditions of employment and may be modified, revoked, changed or deleted by Whataburger Restaurants LLC at any time with or without notice. Nothing in this manual is intended to create, nor is it to be construed to constitute a contract between Whataburger and any of its employees.

Yet the Acknowledgment Sheet also has a specific place where Cardwell acknowledged the binding nature of the arbitration policy:

> ARBITRATION: I understand that Whataburger Restaurant, LLC will submit any legally recognized claim or dispute related to employment, termination of employment, including workplace injury or disease claims except as specifically excluded in paragraph 3.02 of the Arbitration Policy to arbitration and by accepting or continuing employment I shall be required to submit any legally recognized claims or disputes to arbitration.

Her regular paychecks also contained an almost identically worded statement acknowledging the arbitration policy.

Cardwell opposed arbitration on a number of grounds including claims that the agreement was unconscionable and illusory. Following a hearing, the trial court denied arbitration, issuing findings of facts and conclusions of law that sustained one of Cardwell's unconscionability theories. But the findings did not address all of the possible unconscionability theories, and only inferentially refer to the illusory contract argument. In our original opinion, we did not resolve

3

these unaddressed arguments. The supreme court held that was error and we now turn to those additional issues.

## UNCONSCIONABILITY

An arbitration agreement might be attacked as either being (1) procedurally unconscionable (referring to the circumstances surrounding the adoption of the arbitration provision) or (2) substantively unconscionable (referring to the fairness of the arbitration provision itself). *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). Before the trial court, Cardwell claimed the arbitration agreement was substantively unconscionable for three reasons. First, Section 7.01 limited her "rights and remedies." That section provides:

> 7.01 Once an arbitration has been requested by either an employee or former employee or by the Company, the arbitration must be completed within twelve months or it will be dismissed with prejudice or want of prosecution unless good cause is shown.

Cardwell contended the time limit impaired her ability to conduct discovery, is "grossly one-sided," and employs a subjective "good cause" standard that is higher than that under the Federal Arbitration Act (FAA).[1]

Second, Cardwell claimed the agreement was substantively unconscionable because it limited her remedies under the FAA. Section 6.01 of the agreement provides:

> 6.01 Except where it may be shown that the arbitrator's award was procured by fraud or corruption, or where the arbitrator has demonstrated evident partiality or misconduct sufficient to substantially prejudice the rights of one or more of the parties, or where the arbitrator's award shows manifest disregard for the governing law or for this Policy, the award rendered by the arbitrator shall be final, binding and unappealable.

---

[1] The arbitration agreement itself states that it is governed by the FAA. While Cardwell challenged the FAA's application below, she never carried that challenge forward, to either this court or the Texas Supreme Court. We therefore apply federal law that in turn looks to state contract law principles to determine whether there is a valid underlying contract requiring arbitration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

4

Cardwell contends this provision is more restrictive than the FAA, which for instance allows an agreement to be overturned when it was procured by "undue means" (in addition to fraud or corruption). She pointed to several other textual differences between Section 6.01 and 9 U.S.C. § 10(a) in how arbitration awards are reviewed.

Finally, Cardwell contended that the requirement for any arbitration to take place in Dallas made the agreement substantively unconscionable because of the expense of litigating there. As we explained in our first opinion, the trial court specifically addressed this last substantive unconscionability argument (arbitrating in Dallas) but did not address the first two arguments (the Section 7.01 and 6.01 challenges). 446 S.W.3d 910-912.

Below, Cardwell also claimed the agreement was procedurally unconscionable because Whataburger "created an atmosphere that attempted to minimize the possibility of any new hire questioning the arbitration agreement" and took advantage of the parties "disparate bargaining ability" by placing the agreement "in fine in print buried in an employee manual." The trial court made some fact-findings consistent with this claim, but it never expressly held the agreement procedurally unconscionable.

As the supreme court concluded in this case, "the trial court based its ruling on only some of Cardwell's unconscionability arguments and on its own research and views about arbitration." *Cardwell*, 484 S.W.3d at 427. To be more specific, the trial court held the agreement unconscionable on two grounds. Its principle rationale was that Whataburger was buying "a more favorable fact finder and lying to employees about why [it was doing so]." This rationale was the trial court's own, as it appears nowhere in Cardwell's written objections and was first raised by the trial judge at the hearing. A second ground that had been urged by Cardwell reasoned that

5

Whataburger might insist that arbitration must take place in Dallas. The trial court deferred ruling on other issues. [2]

In the original appeal to this court, Whataburger attacked both of these rationales. Whataburger also addressed the other unconscionability arguments that Cardwell made in her response to the motion to arbitrate. Cardwell's briefing to this court urged that the trial court was within its discretion to conclude the agreement was unconscionable as it did. Her brief, however, did not specifically address the substantive unconscionability arguments under Section 6.01 or 7.01 of the agreement.[3]

We now conclude that the substantive unconscionability claims based on Sections 6.01 and 7.01 of the agreement are waived. Cardwell never urged those issues in this court (nor the Texas Supreme Court) as an alternative basis to affirm the decision. Nor did she respond to Whataburger's arguments contesting those claims. Issues not raised on appeal are generally waived. TEX.R.APP.P. 38.1(h)(brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to the record); *Abutahoun v. Dow Chemical Company*, 463 S.W.3d 42, 52-53 (Tex. 2015), *citing Guitar Holding Co., L.P. v. Hudspeth Cnty. Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 918 (Tex. 2008); *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010); *Fredonia State Bank v. General*

---

[2] The trial court's tenth conclusion of law reads:

> Plaintiff raises other arguments as to why the arbitration policy is unconscionable which the Court need not consider at this time. Paying approximately $20,000.00 to purchase a more favorable fact finder and lying to employees about why you are doing it is all the unconscionability this Court needs.

[3] The only mention of these provisions is in her Statement of Facts, which sets forth the provisions, along with several others as the "relevant provisions of the Arbitration Policy regarding unconscionability . . . ." Some of the provisions are underscored. No specific argument addresses how these provisions independently make the agreement unconscionable. Nor does Cardwell address Whataburger's claim that if these provisions are objectionable, they could be severed from the agreement. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 359-361 (Tex. 2008)(holding that remedies-limitation provisions that were individually unconscionable and void could be excised from the agreement without defeating its underlying purpose).

*American Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994)(an appellate court has discretion to find an issue is waived due to inadequate briefing); *City of Midland v. Sullivan*, 33 S.W.3d 1, 10 n.6 (Tex.App.--El Paso 2000, pet. dism'd w.o.j.)(appellant failed to brief complaint and thus waived appellate review). Whataburger specifically addressed the Section 6.01 and 7.01 arguments and Cardwell never responded; our role does not include making arguments on behalf of the litigants before us.

Though not entirely clear, Cardwell's brief does advance part of the procedural unconscionability claim which she had urged below. Cardwell reminded us that the trial court found that (1) she had limited financial means and no negotiating power, (2) the arbitration agreement was included in small typeface on two pages of a fifty-page document and that (3) none of its terms were actually negotiated. Citing our decision in *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791 (Tex.App.--El Paso 2013, no pet.), she contended the totality of the factors supported an unconscionability finding. These facts, however, would be insufficient to rise to the level of procedural unconscionability.

Unconscionability has no precise legal definition because it is not a concept but a determination made in light of a variety of factors. *Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991)(Gonzalez, J. concurring). The unconscionability defense has a long history at common law; an early decision described an unconscionable contract as one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100, 2 Ves. Sr. 125, 155 (1751), *quoted in Venture Cotton Cooperative v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014). "The grounds for substantive abuse must be sufficiently shocking or gross

to compel the court to intercede, and the same is true for procedural abuse -- the circumstances surrounding the negotiations must be shocking." *Delfingen*, 407 S.W.3d at 798.

In deciding whether a contract is procedurally unconscionable, we look to "(1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the non-bargaining ability of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable." [Internal quotation marks omitted]. *Id.*; *Bonded Builders Home Warranty Assn. of Texas v. Rockoff*, 509 S.W.3d 523 (Tex.App.--El Paso June 16, 2016, no pet.). We determine *de novo* whether an agreement fails this standard, but we defer to the trial court's fact findings if they are supported by the evidence. *Delfingen*, 407 S.W.3d at 798.

The trial court's findings might support the unequal bargaining position of these parties, but that by itself does not rise to the shocking quality of evidence needed to invalidate an agreement. Under the FAA, unequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the agreement resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991)("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."); *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)(holding an arbitration agreement was not unconscionable simply because an employer may make a "take it or leave it" offer to its at-will employees). Instead, our cases have focused on circumstances when the employee lacked the means to understand the terms of the agreement and misrepresentations were made about the nature of what they were signing. *Cf. Delfingen*, 407 S.W.3d at 801-02 (worker was illiterate in English,

8

no Spanish language version was available, and terms were misrepresented to him) *with ReadyOne Industries, Inc. v. Casillas*, 487 S.W.3d 254, 262 (Tex.App.--El Paso 2015, no pet.)(Spanish language version available and no evidence of misrepresentation of any terms); *ReadyOne Industries, Inc. v. Flores*, 460 S.W.3d 656, 666-67 (Tex.App.--El Paso 2014, pet. denied)(same). Here, there is no dispute raised about Cardwell's ability to understand the document. The only assertion of any misrepresentation is that Whataburger lied when it claimed arbitration allows the dispute to be resolved "more quickly and at less expense." However, the United States Supreme Court, the Texas Supreme Court, and this court have all published opinions attesting in general to the same proposition. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685, 130 S.Ct. 1758, 1774, 176 L.Ed.2d 605 (2010)(parties choose arbitration in part for its "lower costs, greater efficiency and speed"); *In re Poly-America, L.P.*, 262 S.W.3d 337, 347 (Tex. 2008)(noting that arbitration is intended to provide a lower-cost, expedited means to resolve disputes); *In re Shredder Co.*, L.L.C., 225 S.W.3d 676, 679 (Tex.App.--El Paso 2006, no pet.), *citing Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992)(orig. proceeding).[4] The record here simply does not support a procedural unconscionability claim.

We accordingly sustain Issue One as it pertains to the trial court's ruling on Cardwell's substantive and procedural unconscionability claims, including any alternative claim that the agreement is unconscionable as claimed in Cardwell's response to the motion to compel arbitration.

---

[4] The trial court reasoned that arbitration might actually cost Whataburger more than litigation. Even if true, Cardwell would lack standing to complain about Whataburger's expenses. She would be concerned only with her own expenses, and as we noted in our first opinion, Whataburger waived the Dallas arbitration requirement upon which her cost objections were based. 446 S.W.3d at 912. The trial court offered to make litigation a more expedient option by providing a quick trial setting. But when Whataburger drafted its employee manual, it had no right to expect that this trial court, or any other trial court, would prioritize their dockets to hear Whataburger's cases first.

**ILLUSORY CONTRACT**

Cardwell has urged at each stage of the litigation that Whataburger failed its initial burden to show that there was an enforceable arbitration governing this dispute. We find no real dispute that an arbitration agreement exists, that there is mutual consideration in the reciprocal promises to arbitrate, or that the agreement covers work injury claims. Rather, Cardwell's challenge claims that the arbitration agreement is illusory because Whataburger retained the unilateral right to change or modify the agreement. "An arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). The argument usually arises when the parties agree to arbitrate in one part of a writing, but elsewhere one party has reserved the unilateral right to change the agreement at its sole option. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)(an arbitration agreement is illusory if one party is able to "avoid its promise to arbitrate by amending the provision or terminating it altogether"); *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206-09 (5th Cir. 2012)(finding arbitration agreement illusory because employer could unilaterally modify or terminate provision at any time); *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)(same).

That is exactly the argument Cardwell advances here. The arbitration agreement, contained on two pages of the employee handbook, has no escape clause itself. In fact, under the text of the arbitration policy, Whataburger could not alter the agreement, except on thirty days' written notice. Once "the facts giving rise to the legally recognized claim or dispute have occurred," Whataburger had no right "to unilaterally amend or modify this Policy or otherwise avoid its obligation" to arbitrate. These types of provisions do not create an illusory contract. *See In re Halliburton Co.*, 80 S.W.3d 566, 570 (Tex. 2002). Rather, Cardwell claims that a statement in the

Acknowledgement Sheet provides that everything in the Employee Handbook (which according to Cardwell would necessarily include the Texas Arbitration Policy) "is intended to be used as a guide only." "Its provisions are not conditions of employment and may be modified, revoked, changed or deleted by Whataburger Restaurants LLC at any time with or without notice. Nothing in this manual is intended to create, nor is it to be construed to constitute a contract between Whataburger and any of its employees." Cardwell alternatively contends that at the very least, the seemingly conflicting statements create an ambiguity worthy of remanding the case for the trial court to resolve.

Whataburger responds that the arbitration agreement is "stand-alone" and not part of the Employee Handbook, though it is found there. It also notes that neither the handbook, nor the arbitration agreement incorporate each other -- an important factor in prior case law. Whataburger further contends that the acknowledgment form itself proves that the arbitration agreement and the handbook are distinct documents, as each is listed and acknowledged separately on the form. Moreover, the form cannot be considered under the parole evidence rule, and parol evidence is never admissible to create an ambiguity in a complete agreement.

Three prior decisions bear on this issue. In *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) the court reviewed a one page agreement which prospective employees were required to sign. The first three sentences described an arbitration agreement. The next nine sentences addressed other employment issues such as the employer's right to verify the answers on the employment application, the need for a pre-employment physical, the at-will nature of the employment, and the employer's right to release information to others. *Id*. at 226. The document concluded with the statement that the employer "reserves the right to unilaterally abolish or modify any personnel policy without prior notice." *Id*.

11

The court noted that the arbitration agreement itself stated an adequate basis for consideration--the mutual promise of the employer and employee to submit disputes to arbitration. *Id*. at 229. The unilateral right of the employer to abolish or modify any "personnel policy," however, was problematic if the arbitration policy was a "personnel policy." *Id*. The court then restated its well-established rules for construing claimed ambiguous agreements:

> Deciding whether a contract is ambiguous is a question of law for the court. In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent.

*Id*. at 229 [citations to authority omitted]. The court concluded it could not give a definite, certain meaning to this agreement, and it decided the agreement was ambiguous. It remanded the case for the trial court to conduct a hearing to determine the parties' intent. *Id.* at 231-32, *citing Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992).

Seven years later, the court decided *In re 24R, Inc.,* 324 S.W.3d 564 (Tex. 2010). There, the employee signed an arbitration agreement. In a separate employee handbook, the employer reserved the right to "revoke, change or supplement guidelines at any time without notice." *Id*. at 567. The employee handbook recognized the existence of the arbitration as one of the policies the employee must agree to, but neither the arbitration policy, nor the handbook incorporated by reference each other. *Id*. Moreover, the arbitration agreement itself expressed no right of modification. *Id*. Any right to modify would have to come from the handbook, which by its own terms was not a contract. *Id*. Concluding that the arbitration policy was a "stand-alone"

12

agreement, the court held the trial court abused its discretion in not enforcing the arbitration agreement.

With these bookends, we decided *Sun Fab Indus. Contracting, Inc. v. Lujan*, 361 S.W.3d 147, 152-53 (Tex.App.--El Paso 2011, no pet.). That arbitration agreement contained within the employee handbook. We took some pains to describe how it was described in the table of contents, and its juxtaposition to an acknowledgment form. *Id*. at 148-49. The handbook contained the disclaimer that "any statement or policy herein contained" could be changed by the employer without notice. *Id*. at 151. The employee also signed an acknowledgment form that similarly stated, "the policies in the guide are not a contract" and they might be changed, interpreted, or withdrawn by the employer. *Id*. The arbitration agreement was found on a separate page of the handbook, after the handbook receipt form. *Id*. The employee separately signed it. *Id*. It mentioned, but did not incorporate the employee handbook. *Id*.; *cf In re C & H News Co*., 133 S.W.3d 642, 647 (Tex.App.--Corpus Christi-Edinburg 2003, orig. proceeding)(agreement was illusory when arbitration agreement expressly required arbitration "as provided in the Handbook" and the employer retained the right to unilaterally change the handbook at any time without prior notice). We concluded that the arbitration agreement, like that in *2R, Inc.*, was a stand-alone agreement that contained its own consideration (binding reciprocal promises to arbitrate) and that the non-contractual handbook did not make the agreement illusory. *Id*. at 153.

Both sides contend these cases dictate the outcome here. Cardwell contends that *In re C&H* requires us to find the agreement is illusory, or at least *J.M. Davidson, Inc.* requires a remand with our finding that the agreement is ambiguous. Whataburger likens the case *2R, Inc.* and *Sun Fab*, emphasizing that the agreement here is stand-alone and does not incorporate the handbook. Our problem with both parties' positions is twofold. First, we have an incomplete record because

13

neither party offered the entire employee handbook into the record. We are left with two pages from the middle of that document, and a statement from a separate document that attempts to limit the entire handbook. As we noted in *Sun Fab*, the juxtaposition of the arbitration within the handbook and how it was labeled there, might itself show whether the arbitration agreement is a stand-alone agreement or not. And while Whataburger contends we are limited to looking to the four corners of the agreement under the parole evidence rule, we do not have the four corners of the actual document in our record. We might not even have two corners. We have two pages from the middle of a fifty-page document. We agree that parol evidence cannot be admitted to create an ambiguity to an integrated agreement. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996). The *a priori* question here, however, is what comprises the integrated agreement. Does the Texas Arbitration Agreement truly stand alone, or is it just a piece of the other provisions in the Employee Handbook?

Our second problem is that the trial court may or may not have considered this issue. The trial court's sixth fact-finding states:

> There are provisions in the hand book and the acknowledgment forms which may allow Whataburger to modify, revoke, change, or delete the arbitration policy under some circumstances. Employees have no such powers.

The trial court used "may" with respect to Whataburger's power to modify, and stated that power existed "under some circumstances." This qualifying language undermines Cardwell's contention that nothing in the handbook was contractual and that Whataburger had an absolute right to negate the arbitration agreement at its pleasure. The circumstances referenced are unclear to us, but our record does suggest that the trial court may have had the entire employee handbook before it (otherwise, how did the court know the number of pages in the document?).

We conclude the wiser course is to remand the illusory contract issue for the trial court to decide on the merits, and upon a full record. As tempting as it may be to bring to an end the

14

procedural wrangling over where to litigate this dispute, we are guided by several other considerations. An appellate court has the discretion to consider alternate grounds to affirm a trial court's decision when those grounds were presented, but not decided by the trial court. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625-26 (Tex. 1996)(so stating summary judgment context); *In re Brock Specialty Services, Ltd.*, 286 S.W.3d 649, 656-57 (Tex.App.--Corpus Christi 2009, no pet.)(so stating in arbitration context). The interests of judicial economy guide that discretion. *Cates*, 927 S.W.2d at 625. We are also guided, however, by whether the record is adequately developed on the alternate ground. *In re Brock Services*, 286 S.W.3d at 656. The nature of the issue also plays a role, such as whether it is fact intensive and decided on a case-by-case basis. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 382 (Tex. 1993)(Philips. C.J., concurring)(agreeing that a fact intensive issue not passed on by trial court should be remanded for it to first consider).

These considerations guide us to remand without reaching any conclusions on the illusory contract claim. The record is undeveloped. Cardwell's illusory contract theory was barely a page of her thirty-page objection to arbitration. It garnered a bit more prominence at the hearing, but it is at best addressed with only a single glancing blow in the one of the trial court's twenty-seven findings of fact. An operative document, the Employee Handbook, was never introduced below and may (or may not) shed light on whether the arbitration agreement is in fact a stand-alone agreement, implicating the parol evidence rule and several prior and controlling precedents. As even the small subset of cases we discuss above highlight, whether a contract is illusory is often a fact intensive inquiry.

We emphasize that we have not decided that the documents before us are ambiguous, nor that if required to do so, we could not decide the case on the present record. We merely decide

15

that the trial court should ensure that the record is complete and that it should take the first pass on this issue.

We sustain Whataburger's Issue One as it challenges the trial court's findings invalidating the agreement as being substantively unconscionable. We also overrule Cardwell's alternative basis for asserting procedural and substantive unconscionability. We remand the case for the trial court to decide the illusory contract challenge that Cardwell has urged.


July 26, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating