

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE | § | No. 08-19-00180-CV |
| WHATABURGER RESTAURANTS, L.L.C., | § | AN ORIGINAL PROCEEDING |
| | § | |
| Relator. | § | IN MANDAMUS |
| | § | |

## DISSENTING OPINION

Today we summarily deny Whataburger Restaurants, L.L.C.'s mandamus petition without meaningful explanation. That seems a disservice to a litigant who has now appeared before this Court three times, once before the Texas Supreme Court, and who seeks only to enforce an arbitration clause as an ostensibly more efficient system for resolving disputes. For the readers benefit, this case arises out of a workplace injury on December 23, 2012, by Yvonne Cardwell; Whataburger is a non-subscriber under the Texas Worker's Compensation Act but had in place a workplace injury plan and arbitration agreement with its employees. When Cardwell sued over her injury, Whataburger moved to compel arbitration. At the risk of understatement, the denial of Whataburger's motion to compel arbitration has had a tortured course through the court system.

Whataburger's motion to compel arbitration was initially denied based on a rationale advanced by the trial judge, and not by Cardwell. After a first appeal of that decision to this Court, we rejected the trial court's rationale, but failed to address the alternative arguments for affirmance

1

that Cardwell had astutely raised. *Whataburger Restaurants LLC v. Cardwell*, 446 S.W.3d 897 (Tex.App.--El Paso 2014), *review granted, judgment rev'd*, 484 S.W.3d 426 (Tex. 2016). The Texas Supreme Court said we should have resolved those alternative arguments and remanded the case for us to do so. 484 S.W.3d at 427. We then issued a second published opinion that rejected those alternative grounds save one. We remanded the case to the trial court for resolution of a claim that the arbitration agreement was unenforceable as an illusory contract. *Whataburger Restaurants LLC v. Cardwell*, 545 S.W.3d 73 (Tex.App.--El Paso 2017, no pet.). Our rationale for the remand was that our record only contained an excerpt of a contract document and that the entire document *might* be necessary to correctly evaluate the illusory contract claim. *Id*. at 83-84.

On remand, the trial court heard and ruled on the illusory contract issue, but Whataburger did not receive notice of the adverse ruling against it in time to perfect a second interlocutory appeal. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.016 (authority for filing interlocutory appeal); *CMH Homes v. Perez*, 340 S.W.3d 444, 453 (Tex. 2011) ("Appeals from interlocutory orders are accelerated, and an accelerated appeal is perfected by filing a notice of appeal within twenty days of the order."). The relevant timeline of events is as follows: After remand from this Court, Whataburger on April 9, 2018 filed a supplemental motion to compel arbitration. The trial court heard that motion on June 26, 2018 and took the matter under advisement. The trial court ruled against Whataburger on August 23, 2018 in an order that was filed of record, but apparently never served on the parties. Whataburger did not acquire notice of the signed order until January 23, 2019, during an email exchange with one of Cardwell's attorneys. Eight days later, it filed a motion to reconsider and a companion motion under Rule 306a(4). *See* TEX.R.CIV.P. 306a(4) (allowing for extended appellate deadlines when a party first receives notice or knowledge of appealable order between the 20th and 90th day following signing of the order). A new trial judge

2

had taken the bench in the interim, and that judge denied the motion to reconsider on May 7, 2019. On June 4, 2019, the trial court disposed of Whataburger's 306a(4) motion by making a single finding that Whataburger received notice or acquired actual knowledge of the August 2018 order more than 90 days after it was signed (which would preclude application of Rule 306a). Whataburger filed its mandamus petition with this Court on June 28, 2019.

The Court's opinion does not give any detailed explanation for its disposition, but Cardwell's briefing in this case suggests two reasons why she urged we deny the petition. First, Cardwell urged that Whataburger procedurally defaulted the ability to challenge the order because it did not timely file an appeal from the order, and no extraordinary circumstances justify its delay and resort to the mandamus remedy. Undoubtedly, Whataburger did not file an interlocutory appeal within twenty days of the trial court's order. It later filed a motion to reconsider which the trial court overruled, but a motion to reconsider is not one of the limited orders that can be appealed as an interlocutory order. *See Nazareth Hall Nursing Ctr. v. Castro*, 374 S.W.3d 590, 594 (Tex.App.--El Paso 2012, no pet.). Accordingly, Whataburger raised its claims through a mandamus. Cardwell, however, contends that mandamus is unavailable based on this Court's prior precedent. *See In re H.D. Vest, Inc.*, 334 S.W.3d 333 (Tex.App.--El Paso 2010) (original proceeding). The rationale from our precedent was that if a party had an opportunity to bring an interlocutory appeal, that party did not truly lack an adequate remedy at law, which is one of the prerequisites of a mandamus action. *Id*. The *In re H.D. Vest, Inc.*, case, however, is a one paragraph denial of mandamus relief. The case does not address an exception to the requirement of an adequate remedy on appeal: the existence of "extraordinary circumstances." *See In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210-11 (Tex. 2004) ("Absent extraordinary circumstances, mandamus will not issue unless defendants lack an adequate appellate remedy.").

3

Cardwell anticipated this exception and further claims that Whataburger fails to advance any extraordinary circumstances justifying mandamus. She notes its counsel did not check the trial court's docket sheet to see if an order had been signed, nor otherwise explain the five-month delay between the date the trial court ruled and when Whataburger filed its post-ruling motions.

In my view, the failure of the trial court or the district clerk to notify Whataburger of the ruling on the motion constitutes an extraordinary circumstance. Rule 306a requires the clerk to notify the parties when an "original judgment *or other appealable order* is signed[.]" (emphasis added). TEX.R.CIV.P. 306a. Counsel should have some right to rely on the text of that rule. Otherwise, we would impose a duty on trial counsel to check-in with a trial court (here, at least every 19 days to meet the 20-day deadline for filing a notice of appeal) to see if an order on an argued motion has been issued. Texas has an efficient electronic notification system for a reason, and the apparent failure to notify the parties of the signing of an appealable order cannot be laid at the feet of Whataburger. I could agree that when a party offers no reason for not filing a timely interlocutory appeal, mandamus is an inappropriate alternative pathway to the appellate courts. *See In re Santander Consumer USA, Inc.*, 445 S.W.3d 216, 219 (Tex.App.--Houston [1st Dist.] 2013) (original proceeding) (declining, however, to establish a bright line rule that failing to pursue a statutory interlocutory appeal always precludes mandamus); *In re Fontaine*, No. 12-17-00400-CV, 2018 WL 720802, at *4 (Tex.App.--Tyler Feb. 6, 2018, no pet.) (mem. op.) (denying mandamus relief where the plaintiff petitioned 52 days after the trial court signed the order granting the defendant's special appearance even though notice of the order was served timely); *In re Federal Corp.*, No. 13-18-00060-CV, 2018 WL 549307, at *1 (Tex.App.--Corpus Christi Jan. 25, 2018, no pet.) (mem. op.) (denying mandamus relief following the relator's failure to file a timely appeal though capable of doing so); *see also In re Hart of Tex. Cattle Feeders, LLC*, No. 07-16-

4

00194-CV, 2016 WL 3180436, at *1-2 (Tex.App.--Amarillo June 2, 2016, no pet.) (mem. op.).[1]

But here, Whataburger filed a Rule 306a(4) motion that included an affidavit and exhibits documenting when it received late notice of the signed order.

Cardwell also challenged Whataburger's argument on the merits. After the litany of appeals in this case, the trial court had a single issue before it: whether the arbitration clause was invalid because it was part of an illusory contract. Cardwell urges that the contract documents here unambiguously show that Whataburger reserved the right to unilaterally alter or amend the arbitration agreement which renders it an illusory contract. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003).

Two documents are relevant to this discussion--the "Employee Handbook" and an "Acknowledgment Sheet." The Employee Handbook is some 55 pages long and contains separately titled sections addressing a variety of topics (i.e. "Employment," "Compensation," and "Standards of Conduct"). Relevant here, the handbook contains a separately titled section for "Arbitration Policies," and "Employee Quality Protection Plan." The opening page of the handbook contains this statement:

> This handbook, with the exception of the mutual binding obligations of Company and Employee in the mandatory Arbitration Policy herein, **is not a contract**, expressed or implied, and **does not guarantee employment** for any specific duration. (emphasis original)

Along a similar vein, the opening page also states:

> Without advance notice, the Company reserves the right to change or modify its policies from time to time, unless expressly stated otherwise herein. While every effort will be made to inform you of such changes, the Company may institute changes with or without notice. However, the mandatory Arbitration Policy herein will not be changed except in accordance with paragraph 2.01 therein.

---

[1] After the mandamus petition was denied by the Amarillo Court of Appeals, the case went to trial and the verdict was then appealed. The Texas Supreme Court ultimately held that the arbitration clause was enforceable and that even after a trial on the merits, a court could enforce an arbitration agreement. *Bonsmara Nat. Beef Co., LLC v. Hart of Texas Cattle Feeders, LLC*, 603 S.W.3d 385 (Tex. 2020).

5

The arbitration agreement found within the employee handbook also contains language precluding the unilateral change of its terms:

> The duty imposed on both the Company and on employees to arbitrate all legally recognized claims or disputes arising from the employment relationship shall continue beyond, and not be affected by, the termination of an employee's employment. Moreover the company shall have no right, once the facts giving rise to the legally recognized claim or dispute have occurred, to unilaterally amend or modify this Policy or otherwise avoid its obligation to proceed to arbitration if requested to do so in the absence of mutual consent of the Company and the Employee. Whataburger, Inc. will not alter, modify or amend this Policy without first providing all employees with 30 days advanced written notice. An Employee who chooses to continue employment for at least thirty (30) days after receiving written notice of an amendment or modification of the Policy shall be deemed to have consented.

The parties also direct us to an Acknowledgment Sheet that Cardwell signed. That form is a single page document which begins with a list of four items that have been provided to the employee: (1) Whataburger's Employee Handbook, (2) its Arbitration Policy, (3) the EQPP [workplace injury plan], and (4) a Hazardous Materials Training Completion Record. The Acknowledgment Sheet then contains four distinct sections addressing each of those items and contains a place for the employee to initial their acknowledgment to each. Cardwell initialed each.

Cardwell's illusory contract argument hinges on this language in the part of the form germane to the Employee Handbook:

> I understand that the information provided in the employee handbook is intended to be used as a guide only. Its provisions are not conditions of employment and may be modified, revoked, changed or deleted by Whataburger Restaurants LLC at any time with or without notice. Nothing in this manual is intended to create, nor is it to be construed to constitute, a contract between Whataburger and any of its employees.

She contends that provision must be taken literally to include the prospect that Whataburger could unilaterally change the arbitration agreement because it is contained in the Employee Handbook.

By contrast, Whataburger contends that the arbitration clause is a stand-alone provision that cannot be altered once an employee suffers an on-the-job-injury. In addition to the provisions

6

from the Employee Handbook set out above, Whataburger also calls our attention to the Acknowledgment Sheet which has a specific place where Cardwell acknowledged the binding nature of the arbitration policy:

> ARBITRATION: I understand that Whataburger Restaurants, LLC will submit any legally recognized claim or dispute related to employment, termination of employment, including workplace injury or disease claims except as specifically excluded in paragraph 3.02 of the Arbitration Policy to arbitration and by accepting or continuing employment I shall be required to submit any legally recognized claims or disputes to arbitration.

The parties' arguments call for us to construe the contractual documents. "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If a written instrument can be given a certain or definite legal meaning or interpretation, it is not ambiguous and a court should construe it as matter of law. *Id.* "Whether a contract is ambiguous is [also] a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* at 394.

When a court construes a writing, it "consider[s] *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* at 393 (emphasis original). That way, "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938); *see also Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) (expressly adopting the same principle). And in considering the entire writing, we are instructed that specific contract provisions control over general ones. *Pathfinder*, 574 S.W.3d at 889; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994); *Young Mens Christian Ass'n of Greater El Paso v. Garcia*, 361 S.W.3d 123, 127 (Tex.App.--El Paso 2011, no pet.).

7

Applying these principles, I would agree with Whataburger that the Acknowledgment Sheet did not give it a right to unilaterally change the arbitration agreement, and the agreement is not therefore illusory. Cardwell's theory is anchored in the single section of the Acknowledgment Sheet that is directed at the Employee Handbook generally. Yet specific provisions within the Employee Handbook say that the arbitration agreement cannot be revised once an injury triggers the clause. The Acknowledgment Sheet itself delineates the arbitration agreement as a distinct term of employment, both in its initial description of the different items provided to Cardwell, and in the section that separately describes the arbitration policy to her. In other words, Cardwell's argument contravenes three rules for construing contracts: (1) it is focused on a single provision in isolation of the whole, (2) it reads the agreement in a way to render other terms meaningless, and (3) it ignores the rule that the specific controls over the general. Accordingly, I would not read the agreement to be either illusory or ambiguous.

For these reasons, I respectfully dissent.

JEFF ALLEY, Justice

January 6, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

8