# Supreme Court of Texas

---

No. 21-0165

---

In re Whataburger Restaurants LLC,
*Relator*

---

On Petition for Writ of Mandamus

---

**Argued January 13, 2022**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

An accelerated appeal from an interlocutory order denying arbitration under the Federal Arbitration Act (FAA) may be noticed within 20 days after the order is signed.[1] If a party adversely affected by such an order does not receive notice of it within 20 days, Texas court

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 51.016 ("In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16."); 9 U.S.C. § 16(a)(1)(C) ("An appeal may be taken from . . . an order . . . denying an application . . . to compel arbitration . . . ."); TEX. R. APP. P. 28.1(a) ("Appeals from interlocutory orders (when allowed by statute) . . . are accelerated appeals."); *Id.* R. 26.1(b) ("[I]n an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed . . . .").

rules outline a procedure for restarting the appellate clock, but "in no event" may the clock start "more than 90 days after the judgment or order was signed."[2] We hold that a party who does not receive notice of the order in time to appeal because of the trial court clerk's error may seek review by mandamus. We also hold that the arbitration agreement at issue here is not illusory, and we direct the trial court to order arbitration.

## I

## A

Nine years ago, in February 2013, Yvonne Cardwell sued her employer, Whataburger Restaurants LLC, alleging that she had been injured while working as a dishwasher at its El Paso restaurant two months earlier when a heavy object fell from an upper shelf and hit her on the head. Whataburger moved to compel arbitration based on its mandatory Arbitration Policy.

The Policy is detailed, covering two single-spaced pages. With respect to the effect of continued employment, the Policy states:

> All employees, by accepting employment or by continuing employment after the implementation of this Policy, shall be required to submit any legally recognized claim or dispute related to their employment, including workplace injury . . . , to arbitration . . . . The duty imposed on both [Whataburger] and on employees to arbitrate . . . shall continue beyond, and not be affected by, the termination of an employee's employment. . . . An Employee who chooses to continue employment for at least thirty (30) days after receiving written notice of an amendment or modification of the Policy shall be deemed to have consented.

---

[2] TEX. R. APP. P. 4.2(a)(1); *see also* TEX. R. CIV. P. 306a(4).

With respect to amendments, the Policy states:

> [Whataburger] shall have no right, once the facts giving rise to the legally recognized claim or dispute have occurred, to unilaterally amend or modify this Policy or otherwise avoid its obligation to proceed to arbitration if requested to do so in the absence of mutual consent of [Whataburger] and the Employee. Whataburger . . . will not alter, modify or amend this Policy without first providing all employees with 30 days advanced written notice.

Cardwell signed a one-page Acknowledgment Sheet stating that she had received the Handbook and Policy. The Policy is contained in the Handbook, which runs 51 pages and lists more than 100 topics in its table of contents. The Acknowledgment contains the following provision, which Cardwell initialed:

> **EMPLOYEE HANDBOOK:** I understand that the information provided in the Employee Handbook is intended to be used as a guide only. Its provisions are not conditions of employment and may be modified, revoked, changed or deleted by [Whataburger] at any time with or without notice. Nothing in this manual is intended to create, nor is it to be construed to constitute, a contract between Whataburger and any of its employees.
> I understand my employment with Whataburger is at-will and terminable-at-will. . . .

The Acknowledgment also contained the following, Cardwell-initialed paragraph:

> **ARBITRATION:** I understand that [Whataburger] will submit any legally recognized claim or dispute related to employment . . . including workplace injury . . . to arbitration and by accepting or continuing employment I shall be required to submit any legally recognized claims or disputes to arbitration.

In her original petition, Cardwell listed 15 reasons why Whataburger's Policy is unenforceable. She also filed a lengthy response to Whataburger's motion to compel arbitration, arguing that the Policy is not a valid agreement, is substantively and procedurally unconscionable, and is illusory. She added that the FAA cannot apply because her employment does not involve interstate commerce and that applying the FAA would violate the Tenth Amendment to the U.S. Constitution.

In August 2013, the trial court denied Whataburger's motion to compel arbitration. The court issued "findings of fact" regarding the costs and expenses associated with arbitration without evidence in the record to support them. The court also issued "conclusions of law" that were mostly impertinent, personal disparagements of arbitration in general.[3] The court denied the motion to compel, holding only that the Policy was unconscionable.

In October 2014, the court of appeals rejected the trial court's unconscionability analysis, reversed its order, and remanded with instructions to the trial court to grant Whataburger's motion and order arbitration.[4] But the court of appeals failed to adjudicate cross-points Cardwell had briefed in support of the trial court's order. We granted Cardwell's petition for review, and, without hearing oral argument, issued a short per curiam opinion reversing and remanding to the court

---

[3] *See Whataburger Rests. LLC v. Cardwell,* 446 S.W.3d 897, 907 (Tex. App.—El Paso 2014) (quoting the trial court's order), *rev'd,* 484 S.W.3d 426 (Tex. 2016).

[4] *Id.* at 913.

4

of appeals to "either address[] Cardwell's [alternative] arguments or remand[] the case to the trial court to address them."[5]

On remand, the court of appeals rejected all Cardwell's remaining arguments but one: that the Policy was illusory because Whataburger could revoke it at any time.[6] Although the text of the Policy itself was to the contrary, Cardwell pointed to language in the Acknowledgment that the Handbook's provisions could be "modified, revoked, changed or deleted by [Whataburger] at any time with or without notice" and could not "be construed to constitute a contract between Whataburger and any of its employees." Because the Policy was included in the Handbook, Cardwell argued that under the language in the Acknowledgment Sheet, Whataburger had retained the unilateral right to modify the Policy, rendering it illusory.

The court declined to resolve the issue and instead remanded the case to the trial court for two reasons. First, neither party had offered the entire Handbook into the record, and the court thought that "the juxtaposition of the [Policy] within the handbook and how it [is] labeled there[] might . . . show whether the arbitration agreement is a stand-alone agreement or not."[7] Second, it was unclear to the court of appeals whether the trial court had passed on the illusoriness issue when it

---

[5] *Cardwell*, 484 S.W.3d at 428; *see* TEX. R. APP. P. 59.1 ("If at least six members of the Court so vote, a petition may be granted and an opinion handed down without oral argument.").

[6] *Whataburger Rests. LLC v. Cardwell*, 545 S.W.3d 73, 81-84 (Tex. App.—El Paso 2017, no pet.).

[7] *Id.* at 83.

5

denied Whataburger's motion to compel initially.[8]

The court of appeals' mandate issued in January 2018. Whataburger then filed a supplemental motion to compel arbitration addressing Cardwell's illusoriness argument. At the conclusion of the June 2018 hearing, the trial court indicated that it would take the matter under advisement. A month later—almost five years from the date of its first order—the trial court denied the motion with a one-sentence order.

**B**

A trial court clerk "shall immediately give notice" to the parties when a judgment or appealable order is signed.[9] The clerk failed to give Whataburger or Cardwell notice of the order denying the supplemental motion to compel arbitration. Whataburger's counsel first learned of the order in the course of an email exchange with Cardwell's counsel five months after it issued—long after the 20-day deadline to appeal. When a party fails to receive formal notice or acquire actual notice of an appealable order within 20 days of the order's being signed, the appellate deadline can be extended, but to no more than 90 days after the order was signed.[10] By the time Whataburger received notice of the

---

[8] *Id.*

[9] TEX. R. CIV. P. 306a(3). In August 2018, Rule 306a(3) required a clerk to give notice of rulings "by first-class mail." In December 2021, the Court invited public comment on a proposed amendment to Rule 306a(3) that would authorize clerks to give notice "electronically or by first-class mail." *See* Misc. Docket No. 21-9152 (Dec. 7, 2021). The Court anticipates finalizing the amendments to Rule 306a(3) by May 1, 2022.

[10] TEX. R. CIV. P. 306a(4)-(5); *see also* TEX. R. APP. P. 4.2(a)(1).

trial court's order, 153 days had passed.

Eight days after learning of the denial of its supplemental motion to compel, Whataburger moved for reconsideration. Whataburger also moved for a determination of the date it received notice of the order. The court denied the motion to reconsider in May 2019 and issued an order in June establishing that Whataburger had not received notice of its order denying the supplemental motion to compel within 90 days of its issuance. Because the delay had cost Whataburger its right to appeal, it immediately sought mandamus relief in the court of appeals. Without hearing oral argument, a divided court denied relief with a nonsubstantive opinion in January 2021—18 months after Whataburger filed its mandamus petition.[11] The dissent argued that the trial court clerk's failure to give Whataburger notice of the August 2018 order "constitutes an extraordinary circumstance" justifying review by mandamus.[12] The dissent would also have held that the trial court should be directed to compel arbitration because the Policy is neither illusory nor ambiguous.[13]

Whataburger timely filed a mandamus petition here, and we set the case for oral argument.

## II

To obtain mandamus relief, Whataburger must show that it lacks

---

[11] 632 S.W.3d 101 (Tex. App.—El Paso 2021, orig. proceeding).

[12] *Id.* at 104 (Alley, J., dissenting).

[13] *Id.* at 107.

7

an adequate remedy by appeal.[14] The statutory right to appeal an interlocutory order refusing to compel arbitration[15] is ordinarily adequate. But Whataburger was deprived of that right, first by the trial court clerk's failure to give the required notice of the August 2018 order, and then by the trial court's refusal to vacate the August 2018 order and decide Cardwell's illusoriness challenge anew. An appeal cannot be adequate when the court prevents a party from taking it.

Cardwell acknowledges the clerk's failure to give Whataburger the required notice of the trial court's order. But she points out that equitable principles largely apply in granting mandamus relief,[16] and she argues that Whataburger was not diligent in protecting its rights because it should have "checked in" with the trial court after the June 2018 hearing to ascertain whether the court had yet ruled.

We agree with dissenting justice below that "[c]ounsel should have some right to rely on" the clerk's duty to give notice of trial court orders, that we should not "impose a duty on trial counsel to check-in with a trial court" constantly "to see if an order on an argued motion has been issued", and that "Texas has an efficient electronic notification system for a reason".[17] Moreover, withholding mandamus relief here

---

[14] *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (citing *In re Prudential*, 148 S.W.3d 124, 135-136 (Tex. 2004)).

[15] *See* authorities cited *supra* note 1.

[16] *See, e.g.*, *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) ("Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles. One such principle is that equity aids the diligent and not those who slumber on their rights." (cleaned up)).

[17] 632 S.W.3d at 104 (Alley, J., dissenting).

could encourage counsel who learn of a ruling denying arbitration, despite the clerk's failure to give notice, to wait to inform opposing counsel until after the 90-day deadline for seeking relief has passed.

Furthermore, Whataburger acted promptly to protect its right to appellate review immediately upon learning of the August 2018 order. Within eight days, Whataburger filed motions in the trial court to reconsider and for a judicial determination of its notice date, and it sought mandamus relief in the court of appeals within a few weeks of those motions' being denied.

We hold that Whataburger has demonstrated that it lacks an adequate appellate remedy because the clerk's failure to give notice of the trial court's order deprived it of that remedy,[18] and Whataburger did not sleep on its rights.

## III

To obtain mandamus relief, Whataburger must also show that the denial of its motions to compel arbitration was a clear abuse of the trial court's discretion. "A trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion."[19] Cardwell argues that the Policy is an illusory agreement, and therefore invalid and unenforceable, because properly interpreted,

---

[18] Before an interlocutory appeal from an order refusing to compel arbitration under the FAA was created by statute, we held that "mandamus [is] the appropriate remedy [to obtain review] since otherwise the very subject of the appeal—the right to arbitrate, as contracted for by the parties—would be rendered illusory." *In re Reece*, 341 S.W.3d 360, 374-375 (Tex. 2011) (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992)).

[19] *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (quoting *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010)).

9

it allows Whataburger unilaterally to terminate her right to arbitration at any time. Whataburger disagrees.

"Arbitration agreements are interpreted under traditional contract principles."[20] The plain language controls,[21] "[w]ords must be construed 'in the context in which they are used,'"[22] and we will "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."[23] "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."[24]

## A

The one-page Acknowledgment Cardwell signed recites:

> I have been provided with copies of . . . [Whataburger's] Employee Handbook [and] Arbitration Policy . . . . I understand that it is my responsibility to read and comply with all processes set forth in the policy . . . . I also understand that this information is intended to be used as a guide only.

Part of the text that follows is captioned "Employee Handbook". We

---

[20] *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (collecting cases).

[21] *Wagner v. Apache Corp.*, 627 S.W.3d 277, 285 (Tex. 2021) (citing *J.M. Davidson, Inc.*, 128 S.W.3d at 229).

[22] *Sundown Energy LP v. HJSA No. 3, L.P.*, 622 S.W.3d 884, 888 (Tex. 2021) (quoting *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018)).

[23] *J.M. Davidson, Inc.*, 128 S.W.3d at 229 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951)); *see also Wagner*, 627 S.W.3d at 285.

[24] *J.M. Davidson, Inc.*, 128 S.W.3d at 229 (collecting cases).

quoted the pertinent portion above. Importantly, it states:

- "the *information* provided in the Employee Handbook is intended to be used as a guide only";

- the Handbook's "*provisions* are not conditions of employment and may be modified, revoked, changed or deleted by [Whataburger] at any time with or without notice"; and

- "employment with Whataburger is at-will and terminable-at-will".

Cardwell argues that these references suggest that the Arbitration Policy is only *information* in, or a *provision* of, the Handbook that is not contractual and can be changed by Whataburger at any time without notice, rendering Whataburger's promise to arbitrate illusory. But the text just below captioned "Arbitration", also quoted above, states that Whataburger "will submit any legally recognized claim or dispute related to . . . workplace injury . . . to arbitration and by accepting or continuing employment I shall be required to submit" claims to arbitration also.

Cardwell likens this case to *J.M. Davidson, Inc. v. Webster*, where we concluded that an arbitration agreement was ambiguous.[25] There, employee Webster signed a one-page document, the first paragraph of which provided that Webster and the company were "mutually agree[ing] and contract[ing] that any and all claims, disputes or controversies . . . [would] be exclusively and finally settled by binding arbitration".[26] Neither this paragraph nor any other language in the

---

[25] 128 S.W.3d at 230-231.

[26] *Id.* at 225.

11

document addressed the company's ability to modify the arbitration agreement specifically, but a line at the end of the document stated that the company "reserve[d] the right to unilaterally abolish or modify any personnel policy without prior notice."[27] After reciting the familiar principles of contract construction, we said that "we [could not] give the arbitration agreement a definite or certain legal meaning" because it was unclear whether the company's unilateral right to abolish or modify personnel policies included the arbitration agreement.[28]

Here we can give the Policy a definite legal meaning. The Policy text itself, quoted earlier, which Cardwell concedes is not illusory, contains detailed restrictions on Whataburger's ability to change the Policy. It states that Whataburger "shall have no right, once the facts giving rise to the legally recognized claim or dispute have occurred, to unilaterally amend or modify [the] Policy or otherwise avoid its obligation to proceed to arbitration". It also prohibits Whataburger from "alter[ing], modify[ing] or amend[ing] [the] Policy without first providing all employees with 30 days advanced written notice." In *In re Halliburton Co.*, we concluded that a policy with similar restrictions on the company's ability to modify or revoke it was not illusory.[29]

---

[27] *Id.* at 226.

[28] *Id.* at 229.

[29] 80 S.W.3d 566, 570 (Tex. 2002). Halliburton's policy stated that no amendment would apply to a dispute that Halliburton already had actual notice of on the date of amendment, that Halliburton could not terminate the policy with respect to a dispute that arose prior to the date of termination, and that Halliburton would give employees ten days' notice before terminating the policy. *Id.* at 569-570.

12

The interpretation Cardwell advances is plausible only if one reads each snippet of text she points to in isolation. But "[c]ontext matters when interpreting a contract".[30] Although the Policy is physically contained in the Handbook, the Policy does not reference or incorporate the Handbook's other provisions. The Handbook's introduction distinguishes between the Policy and the rest of its provisions and makes clear that the Policy is an exception to the general rule that the Handbook is merely a guide subject to revision by Whataburger. For example, the introduction states that "with the exception of the mutual binding obligations of Company and Employee in the mandatory Arbitration Policy herein," the Handbook is not a contract. The introduction also distinguishes between the Policy and the rest of the Handbook when discussing Whataburger's right to make changes. One sentence provides that "unless expressly stated otherwise herein", Whataburger can change the Handbook without notice. Section 2.01 of the Arbitration Policy is a place inside the Handbook that expressly states otherwise. Just a few sentences later, the introduction clarifies again that "the mandatory Arbitration Policy herein will not be changed except in accordance with paragraph 2.01".[31]

The structure of the Acknowledgment also refutes Cardwell's

---

[30] *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 513 (Tex. 2019) (Guzman, J., concurring and dissenting) (citing *TGS-NOPEC Geophysical Co. v. Combs*, 240 S.W.3d 432, 441 (Tex. 2011)).

[31] *See In re 24R, Inc.*, 324 S.W.3d 564, 567-568 (Tex. 2010) (rejecting an illusoriness challenge based on language in the employee manual where the manual recognized the existence of the arbitration agreement, but the agreement was a stand-alone contract that did not incorporate the manual).

argument. The Acknowledgment recites the documents Cardwell was provided, listing the Policy separately from the Handbook. Separate parts of the Acknowledgment address the Handbook and the Policy. With one exception, the references to *information* and *provisions* being modified by Whataburger are located solely under the "Employee Handbook" heading. There is one stray reference to "information . . . [being] used as a guide only", but when viewed in the context of the entire Acknowledgment and together with the Policy itself, that lone reference does not render the Policy ambiguous with respect to the limits on Whataburger's ability to make changes to it.

**B**

Cardwell makes a different argument regarding the text following the Arbitration heading. After restating Whataburger's obligation to arbitrate, the text states that "by accepting or continuing employment", an employee "shall be required to submit" her claims to arbitration. Cardwell argues that this language conditions the parties' promises to arbitrate on Cardwell's continued, at-will employment and that the existence of that condition renders the parties' promises illusory. At oral argument, counsel pointed to our decision in *In re Halliburton Co.* for support. But in *Halliburton*, we *upheld* an arbitration policy when a notice that employees received about it contained similar language.[32]

In that case, Halliburton sent a notice to its employees that it was adopting a new mandatory arbitration program for workplace disputes.

---

[32] *See* 80 S.W.3d at 568-570.

14

We paraphrased the notice as "inform[ing] employees that by continuing to work after January 1, 1998, they would be accepting the new program."[33] Halliburton's brief on the merits quoted the notice language as follows:

> If you choose to accept employment or continue your employment with any Halliburton company, you will have agreed to all provisions under the Dispute Resolution Program. This includes the requirements under the Program that any legal dispute between you and your employer be submitted to final and binding arbitration.[34]

After the program took effect, Halliburton demoted at-will employee Myers, Myers sued, and litigation ensued over Halliburton's motion to compel arbitration.[35]

The court of appeals held that the notice language rendered Halliburton's promise to arbitrate illusory, but we disagreed.[36] We explained that where the effectiveness of an agreement is "dependent on the at-will employee's continued employment", the agreement is illusory because one side can "avoid performance simply by terminating the employment relationship".[37] But the notice language did not have that

---

[33] *Id.* at 568.

[34] Relator's Brief on the Merits at 3-4, *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (No. 00-1206).

[35] *Halliburton*, 80 S.W.3d at 567.

[36] *Id.* at 569-570.

[37] *Id.* at 569 (discussing *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645-646 (Tex. 1994)); *see also In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance." (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex.

effect. It did not make "the Program . . . *dependent* on continuing employment. Instead, [the Program] was *accepted* by [Myers'] continuing [his] employment" after receiving the notice.[38]

The language Cardwell points to in the Acknowledgment is substantially the same as the language in *Halliburton*, and it mirrors the acceptance language in the Policy itself. In the Acknowledgment, Whataburger's promise to arbitrate is followed immediately by the language providing that "by accepting or continuing employment", an employee will "be required to submit . . . claims . . . to arbitration" too. The language of section 2.01 just reverses that order. It starts by stating that "[a]ll employees, by accepting employment or by continuing employment after the implementation of this Policy," will be required to arbitrate any dispute in accordance with the Policy. Then the very next sentence contains Whataburger's reciprocal promise to arbitrate, which provides consideration for Cardwell's promise to arbitrate.[39] A few sentences later, the Policy clarifies that the agreement to arbitrate is not dependent on Cardwell's employment status because the agreement extends beyond the end of the employment relationship: "The duty imposed on both the Company and on employees to arbitrate all legally

---

2009))); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) ("At-will employment does not preclude formation of other contracts between employer and employee, so long as neither party relies on continued employment as consideration for the contract." (citing *Light*, 883 S.W.2d at 645)).

[38] *Halliburton*, 80 S.W.3d at 569.

[39] *See 24R, Inc.*, 324 S.W.3d at 566 ("Mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement." (citing *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007))).

16

recognized claims or disputes arising from the employment relationship shall continue beyond, and not be affected by, the termination of an employee's employment."

We hold that Whataburger's Policy is not illusory.

\* \* \* \* \*

"Federal and state policies favor arbitration for its efficient method of resolving disputes . . . ."[40] Protracted litigation over the validity of an arbitration agreement thwarts those policies. This case has been in litigation more than nine years, without Cardwell's injury claim once being heard. For both sides, the availability of arbitration should have been resolved long before now.[41]

In the extraordinary circumstances presented, mandamus relief is available to correct the trial court's denial of Whataburger's supplemental motion to compel arbitration and its motion for reconsideration of that ruling. Because Whataburger's Policy is not illusory, the trial court clearly abused its discretion by refusing to compel arbitration.

We conditionally grant Whataburger's petition for a writ of

---

[40] *Rachal v. Reitz*, 403 S.W.3d 840, 842 (Tex. 2013) (citations omitted).

[41] Texas appellate courts should not again be presented with a case in which a court of this State has prevented a party from taking an appeal to which the party has a clear right. If such a case does again arise, its nature and context will determine the scope of the relief. Because this case involves arbitration, claimed deprivations of which we traditionally addressed via mandamus, and because of the unusually elongated procedural history, we have addressed the merits directly as a matter of judicial economy rather than, for example, directing the court of appeals to first address the case on the merits.

mandamus and direct the trial court to promptly issue an order compelling arbitration of Cardwell's claims. We are confident the trial court will comply. The writ will issue only if it fails to do so.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** April 22, 2022